**In the Matter of the WELFARE OF Amy CLOUGH, Minor Child.**

**No. CX–85–73.**

Court of Appeals of Minnesota.

June 18, 1985.

Review Denied Aug. 29, 1985.

Barbara Ditmanson, Grundhoefer & Neuville, P.A., Northfield, Minn., for Amy Clough.

Steven H. Alpert, Rice County Atty., Gregory G. Colby, Asst. Rice County Atty., Eugene J. Crosby, Faribault, Minn., for Kellee Clough.

Considered and decided by POPOVICH, C.J., and PARKER and FOLEY, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

This is an appeal from an order terminating appellant Kellee Clough's parental rights to her minor child. The trial court concluded that Rice County had proved by clear and convincing evidence that the conditions leading to the determination of dependency had not been corrected, despite reasonable efforts under the direction of the court, and ordered that appellant's parental rights to the child be terminated. We affirm.

## FACTS

Amy Clough was born on November 13, 1981, to Frederick Clough and appellant Kellee Clough (now Kellee Flynn). Rice County Social Services became involved with Kellee and Amy in 1982, initially providing public health counseling.

In October 1982 appellant voluntarily entered chemical dependency treatment and placed Amy in foster care. In November 1982 appellant entered a halfway house but left in December 1982 against her counselor's recommendation.

In January and February of 1983 appellant saw a counselor at Rice County Family Services. Those counseling sessions ended abruptly when appellant said she was going to go out and get drunk and commit suicide if she were not voluntarily committed to the St. Peter State Hospital. Social Services made arrangements to have her transported to St. Peter State Hospital, where she was placed in the chemical dependency unit.

A petition alleging dependency was filed with the Rice County District Court on February 15, 1983, asserting that Amy was without proper parental care because of the emotional, mental, or physical disability or state of immaturity of her parents (citing Minn.Stat. § 260.015, subd. 6(d)). Specifically, the petition alleged that appellant had failed to provide medical attention for Amy, did not care for her daily needs, had left the child with neighbors for several days, and that appellant had a drinking

problem. A hearing was held on March 21, 1983, at which appellant admitted the allegations of the petition, and the court placed Amy in a licensed foster home. The court further ordered appellant to follow the guidelines of a December 1982 foster placement plan.

After the March 1983 hearing, a second foster placement plan was set up. The conditions of the plan included the following:

(1) Kellee agrees to successfully complete the chemical dependency program at St. Peter State Hospital.

(2) She agrees to go to a halfway house and successfully complete that program.

(3) She agrees to attend parenting classes.

(4) She agrees to remain free of all alcoholic beverages.

(5) She agrees to find, set up, and financially secure an apartment for her and Amy prior to Amy's return to her.

(6) She agrees to keep Amy away from all smoking areas because of Amy's current and chronic lung infection.

(7) Kellee agrees to follow through on all of the above expectations consistently and keep in contact with Rice County Social Services as to her progress and the eventual goal of having her child returned to her full time.

(8) Kellee agrees to become much more independent and not to rely on friends, social services, or relatives to get her needs met.

(9) Kellee will specifically work on learning to relate to Amy on an age-appropriate basis as opposed to expecting Amy to relate to her on an adult level.

Appellant completed in-patient treatment at St. Peter State Hospital. From there she entered the Pine Circle Halfway House in Rochester, Minnesota, but was discharged because of rules violations, which included drinking, on May 31, 1983.

On August 17, 1983, a petition for termination of appellant's parental rights was filed, alleging that following a determination of dependency, reasonable efforts under the direction of the court had failed to correct the conditions leading to the determination of dependency. Appellant contested the petition.

Appellant entered the Methodist Hospital alcohol and drug dependency unit in Rochester, Minnesota, in June 1984 for chemical dependency treatment. The staff recommended she receive long-term treatment at a state hospital or halfway house. She told the staff she did not feel she needed this treatment, and they discharged her before she completed the program due to lack of progress.

Appellant received counseling from chemical dependency counselors at Zumbro Valley Mental Health Center after leaving Methodist Hospital. She made very little progress in her counseling, and it was terminated after she failed to show up for her appointments.

Appellant has been married and divorced twice. She presently lives with her boyfriend, who is a heavy drinker and who has been divorced four times. He has two children from a previous marriage whom he does not support. His employment record is sporadic at best. Appellant has had approximately seven jobs since November 1983.

Since May 1983, appellant and her boyfriend have lived in five different residences. Since May 1984, they have lived in a rooming house with five other men.

During 27 months of foster care, appellant has visited Amy 25 times. The infrequency of the visits was caused in part by transportation problems.

Appellant has one other child, born in 1977, who has lived with her relatives since approximately 1979. Appellant has very little contact with this child, and Goodhue County Social Services has had protective custody since 1981. Goodhue County Social Services set up a foster care plan for appellant in 1977. Their foster plan and that of Rice County are very similar in nature, as both required appellant to obtain chemical dependency treatment, parenting

classes and role modeling. Appellant has not complied with or completed that foster care plan.

At the November 1984 trial testimony was given by two social workers, Amy's psychologist, three chemical dependency counselors, appellant's therapist, and appellant.

Gail Knopik, a counselor at Progress Valley, testified that appellant was unmotivated, self-centered, and refused to recognize her chemical dependency. Knopik recommended an extended alcohol treatment program for appellant. However, she feels appellant has a poor prognosis because of her denial and lack of motivation.

Shirley Brown, program director at Pine Circle, made a similar evaluation of appellant. She indicated that appellant made no progress while at Pine Circle and was not motivated to change. She felt appellant's progress was poor because she refused to acknowledge her chemical dependency, was not honest with herself or others, and was extremely manipulative.

Marsha Kaufman, a clinical social worker for the Rice County Social Services Department, counseled appellant. She observed that appellant has had little nurturing herself and cannot nurture anyone else. She is struggling to survive and does not have enough remaining strength to nurture a young child. Kaufman felt that no progress was made in counseling and recommended that appellant attend AA and receive additional counseling.

Appellant has been advised by all treatment programs she has participated in to attend AA. She testified that the only meetings she attends are the open forums on Saturday nights. All the counselors have recommended that she attend the closed AA meetings, which only alcoholics attend and where they attempt to work on their alcohol problems.

Appellant testified that she has not had a drink since April 1984. All of the chemical dependency counselors who testified at the trial said that a period of abstinence from alcohol without ongoing treatment is not a lasting solution and predicted that she will drink again in the future.

Bryan Stenlund, licensed consulting psychologist, began working with Amy in May 1984. He testified that Amy suffered from the effects of her mother's unstable lifestyle and disciplinary approach. This was manifested by behavioral problems such as temper tantrums, inability to live within the structure set by the foster parents, and inability to relate to other people. The foster home has provided some stability for her, and her behavioral problems and inability to relate to other people have abated somewhat.

Stenlund feels Amy needs a stable family environment, security, appropriate understanding of her needs, and someone who can give her the limits she needs to have stability in her life. If Amy does not receive those needs, Stenlund forecasts difficulties in her future. It should be noted that, at the time of the petition for termination of the mother's parental rights, the father was an inmate of Stillwater State Prison.

The trial court concluded the County had proved by clear and convincing evidence that the conditions leading to the determination that Amy Clough was dependent have not been corrected despite reasonable efforts made under the direction of the court. It therefore ordered Kellee Flynn's parental rights terminated.

## ISSUE

Did the trial court err in terminating appellant's parental rights to Amy Clough because conditions leading to the determination of dependency had not been corrected despite reasonable efforts under the direction of the court?

## ANALYSIS

Minn.Stat. § 260.221(b)(5) (1984) provides:

The juvenile court may, upon petition, terminate all rights of a parent to a child in the following cases:

* * * * * *

(b) If it finds that one or more of the following conditions exist:

\* \* \* \* \* \*

(5) That following upon a determination of neglect or dependency, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination.

Appellant contends the trial court erred in finding that the conditions leading to the determination of dependency have not been corrected. We disagree.

Findings of fact by the trial court will not be overturned in a termination case if they are supported by substantial evidence and are not clearly erroneous. *In re Welfare of Adams,* 352 N.W.2d 105, 106 (Minn. Ct.App.1984), *pet. for review denied,* (Minn. Nov. 8, 1984) (citing *In re Welfare of J.M.S.,* 268 N.W.2d 424, 428 (Minn. 1978)).

However, trial courts must make clear and specific findings which conform to the statutory requirements. *In re Welfare of Clausen,* 289 N.W.2d 153, 155 (Minn.1980). The burden is upon the petitioner to prove that termination is proper and is "subject to the presumption that a natural parent is a fit and suitable person to be entrusted with the care of a child." *In re Welfare of Chosa,* 290 N.W.2d 766, 769 (Minn.1980).

 The foremost ground leading to the finding of dependency was that appellant was chemically dependent and that consequently she was unable to attend to Amy's daily needs or needs for lasting, intimate parental contact. *In re Welfare of E.L.H.,* 356 N.W.2d 795, 797 (Minn.Ct. App.1984) (Crippen, J., concurring specially). The record in this case is replete with evidence that appellant remains chemically dependent, has been through numerous treatment facilities, and still fails to recognize her dependency. Because of her chemical dependency, appellant is usually unemployed, moves frequently, and associates with people who are also chemically dependent. She is currently living in an environment wholly inappropriate for a young child.

 The evidence also sustains the trial court's conclusion that appellant lacks an understanding of and is unable to attend to the child's daily needs. This is exemplified by appellant's failure to visit Amy for extended periods of time. Failure to visit is not sufficient in and of itself to terminate parental rights. *In re Welfare of Solomon,* 291 N.W.2d 364, 368 (Minn.1980). However, appellant's lack of visitation effort is indicative either of her inability to perceive her child's needs or her unwillingness to attend to them.

The trial court's conclusion that the conditions leading to the dependency determination will continue for a prolonged, indeterminate period is also substantiated by the evidence. Appellant has not succeeded with the foster care plan, has permitted another child to remain in foster care in Goodhue County's custody for the past six years without attempts to reunite with that child, has not acknowledged the need for further institutional treatment of her chemical dependency and attendance at AA, has waited until the time of trial to state that she would attend closed AA meetings and find a sponsor, would consider further psychological testing, and would provide a stable home for her child, and at trial still had no realistic proposals for spending more time with her child or establishing a suitable home and lifestyle.

We agree with the trial court that the County has proved by clear and convincing evidence that the conditions leading to the determination of dependency have continued despite reasonable efforts by the County to correct them. The County has provided all the services available in an attempt to help appellant control her chemical dependency and develop a responsible attitude toward Amy. The evidence shows appellant has not responded.

In deciding whether to terminate parental rights, the interests of the parent and the child are to be considered "along with the circumstances of the particular case in an effort to determine which of these interests is to predominate." *In re Welfare of*

*HGB, MAB and DJB,* 306 N.W.2d 821, 826 (Minn.1981). Appellant has demonstrated an inability to care in a responsible way either for herself or her children. Amy's psychologist indicates that she has suffered emotionally because of appellant's pattern of care and will further suffer without a stable and secure family environment. The evidence supports the trial court's determination that Amy's interests would be best served by terminating appellant's parental rights.

## DECISION

The trial court's decision to terminate appellant's parental rights is supported by detailed findings and substantial evidence.

Affirmed.