In the Matter of the WELFARE OF
G.B.N. and J.S.N., Children.

No. CX-87-14.

Court of Appeals of Minnesota.

Sept. 22, 1987.

Dennis E. Johnson, Bemidji, for appellant Father.

Timothy R. Faver, Beltrami Co. Atty., Bemidji, for Beltrami County.

Neal R. Scharmer, Bemidji, for children.

Considered and decided by POPOVICH, C.J., and NORTON and MULALLY *, JJ.

## OPINION

NORTON, Judge.

Following a hearing in the trial court, appellant's parental rights were terminated. The children's mother did not appear at the hearing and her parental rights were terminated by default. The trial court denied appellant's motion for a new trial. On appeal, appellant Jerry Norby a/k/a Sloan claims the trial court erred by terminating his parental rights. We disagree and affirm.

## FACTS

Appellant and Gail Norby were married in 1976, separated in 1979 and divorced in 1981. They have two children, G.B.N., age 10, and J.S.N., age 9. The dissolution proceeding awarded custody of both children to their mother.

When appellant and Gail Norby separated, appellant took G.B.N. and relocated to the Twin Cities. He had G.B.N. for less than one month. In 1981, J.S.N. lived with appellant for two weeks. Other than those occasions, appellant has had no extended contact with the children since 1979.

In 1983 the children were placed in foster care. Following service by publication, appellant, who was represented by an attorney, appeared to contest the petition to terminate his parental rights. On February 26, 1985 both parents consented to a finding of dependency, so the trial court dismissed the petition to terminate parental rights. On April 11, 1985 the court entered an order which included the following dispositional plan:

IT IS HEREBY ORDERED, based on the dependency adjudication of the child on February 22, 1985, that the dispositional plan include the following:

\*    \*    \*    \*    \*    \*

a. Work with Beltrami County Social Services.

b. Attend parenting classes.

c. Obtain a job so that he could support the two children if he were given custody.

d. Work with the Beltrami County Child Support office to decrease the amount of child support owed so that it could reach a reasonable level in the eyes of the Court.

e. Sign a release of information form for the Beltrami County Service Center to exchange information with his probation officer, currently Emil Hanson.

f. Have an evaluation performed at the Upper Mississippi Mental Health Center which would include a psychological, drug, and/or alcohol assessment and follow the recommendation from such evaluation.

g. Follow weekly one hour scheduled supervised visitations with both children and more visitation would be allowed if warranted.

Appellant was present when the April 11 order was entered, he received a copy of the order and admits that it was explained to him that failing to follow the order could lead to termination of his parental rights.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

Despite the clear mandates of the April 11 order, appellant saw the children a total of only seven and one-half hours from January 1985 until the time of his arrest for second degree assault in August 1985 and has had no personal contact with the children since May 22, 1985. Appellant did not obtain employment nor did he work to reduce his child support obligation, although he did pay $5.00 following the commencement of this appeal. Further, appellant had only intermittent contact with the Beltrami County Social Services. As a result of appellant's failure to comply with the April 11 order, another petition for termination of parental rights was filed on April 3, 1986.

At the time the children were first placed in foster care, they were nervous, edgy and insecure. J.S.N. was wetting the bed. Both children had nightmares. The children's foster mother testified that the children were glad when appellant's visits were canceled and that they did not want to live with appellant.

Dr. Donald DeKrey, Clinical Director of the Upper Mississippi Health Center, evaluated both children on June 27, 1986. Dr. DeKrey testified that the parent-child relationship could not be reestablished and that the children needed a stable, secure environment where they would receive predictable, constant care. In Dr. DeKrey's opinion, there is a high likelihood that the children's emotional adjustment would be damaged if they were returned to appellant's care. Finally, Dr. DeKrey testified that there was no viable alternative to termination of appellant's parental rights.

Currently, appellant is incarcerated in the Stillwater State Prison, but is scheduled for release in August 1987. Appellant has undergone chemical dependency treatment while in prison. Appellant's chemical dependency counselor testified that about two-thirds of those who complete the chemical dependency program are reincarcerated following their release and that appellant's prognosis for continued sobriety is only fair.

## ISSUES

1. Can appellant now contest the out-of-home placement of his children which resulted from a February 1985 dependency adjudication?

2. Did the dispositional plan provide appellant with sufficient services to correct the conditions leading to the dependency adjudication?

3. Did the trial court properly consider the best interests of the children when terminating appellant's parental rights?

4. Did the trial court err by terminating appellant's parental rights?

## ANALYSIS

1. Initially, appellant claims that the children's custody should not have been placed outside the home in the first place. We find no merit to appellant's claim.

The out-of-home placement resulted from the trial court's February 22, 1985 finding of dependency, which both parents consented to. The time for appealing the 1985 dependency adjudication has long since expired. An appeal from an order adjudging a child dependent must be taken within 30 days of the filing of the order. *Matter of Welfare of J.J.B.*, 390 N.W.2d 274, 281 (Minn.1986). *See* Minn.R.Juv.Cts. 63.01, subd. 2(B).

Even if we could consider appellant's claim at this time, the record supports the trial court's finding of dependency. In the five years prior to the trial court's finding of dependency, appellant had spent, at most, several weeks with his children. Appellant has had no meaningful relationship with his children, has done nothing to show his fitness or willingness to be a parent and has not shown an ability to support or care for the children.

2. Appellant claims that the conditions of Minn.Stat. § 257.071, subd. 1 (1986) have not been complied with. The purpose of Minn.Stat. § 257.071, subd. 1 is to give parents written guidelines for correcting the conditions leading to the finding of dependency. *Matter of Welfare of Copus*, 356 N.W.2d 363, 366 (Minn.Ct.App.1984). The law secures parental rights only so

long as the parent promptly recognizes and discharges his obligations. *Matter of Welfare of H.G.B.*, 306 N.W.2d 821, 825 (Minn. 1981).

■ Here, the conditions for reuniting appellant with his children were clearly set forth in the dispositional plan. Appellant was in court when the dispositional plan was read, he received a copy of it and was told that failure to comply with the conditions could lead to termination of his parental rights. The relationship of each condition to the finding of dependency is reasonable and obvious. Further, each condition sets forth a valid concern of the state in protecting the children. As a result, we find no merit in appellant's claim that the dispositional plan failed to provide him with sufficient services to correct the conditions leading to a finding of dependency.

■ 3. Appellant also claims that the trial court failed to consider the best interests of the children when terminating his parental rights. In *Welfare of J.J.B.*, the Minnesota Supreme Court held that while it is ordinarily in the best interests of a child to be within the custody of his or her natural parents, where the record:

> demonstrates a long-term placement characterized by a repeated failure of reasonable efforts to reunite the family, the trial court should appropriately determine what action most readily promotes the best interests of the child. While judicial caution in severing the family bonds is imperative, untoward delay of the demonstrated inevitable is intolerable.

390 N.W.2d 274, 280.

Dr. DeKrey testified that the parent-child relationship could not be reestablished, that there would be a high likelihood that the children's emotional adjustment would be damaged if they were returned to appellant's care and that the children needed permanency, which appellant cannot provide. Finally, the children's foster mother testified that the children were glad when appellant's visits were canceled and that they did not want to live with appellant.

Although the trial court did not specifically address the best interests of the children in its findings, the record supports the trial court's conclusion that termination of appellant's parental rights is in the children's best interests.

■ 4. Finally, appellant claims that the record does not support the trial court's findings and the findings do not support termination of his parental rights. The trial court found termination of appellant's parental rights proper under Minn.Stat. § 260.221 (1986), which provides, in part:

### Grounds for Termination of Parental Rights

The juvenile court may, upon petition, terminate all rights of a parent to a child in the following cases:

(a) With the written consent of a parent who for good cause desires to terminate parental rights; or

(b) If it finds that one or more of the following conditions exist:

\*   \*   \*   \*   \*   \*

(5) That following upon a determination of neglect or dependency, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination * * *

The trial court's findings of fact will not be overturned in a termination case if they are supported by substantial evidence and are not clearly erroneous. *Matter of Welfare of Clough*, 369 N.W.2d 337, 341 (Minn. Ct.App.1985), *pet. for rev. denied* (Minn. Aug. 29, 1985.) This court must exercise great caution and affirm a termination of parental rights only where the evidence clearly mandates such a result in accordance with statutory guidelines. *Matter of Welfare of J.K.*, 374 N.W.2d 463, 466 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Nov. 25, 1985). While the fact that a parent is in prison cannot be enough in itself to render a parent palpably unfit and warrant termination of parental rights, incarceration, together with other evidence, such as the parent's incapability or lack of motivation to care for the child may be the basis for such a decision. *Matter of Wel-*

*fare of B.C.*, 356 N.W.2d 328, 331 (Minn.Ct. App.1984).

Here, the record clearly reveals appellant's incapability and lack of motivation to care for the children. Appellant has not spent any extended time with the children since 1979. Further, appellant is incapable of financially providing for the children. G.B.N. and J.S.N. need a permanent and stable environment, something that appellant cannot provide.

## DECISION

The trial court did not err by terminating appellant's parental rights.

Affirmed.