In the Matter of the WELFARE OF Michael MAAS.

No. C6-84-92.

Court of Appeals of Minnesota.

Oct. 2, 1984.

Hugh T. Nierengarten, New Ulm, for appellant.

R.T. Rodenberg, County Atty., Brown County, John R. Rodenberg, Asst. County Atty., P.J. Moriarty, New Ulm, for respondent.

Heard, considered and decided by SEDGWICK, P.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Jan Maas appeals the termination of her parental rights to her son, Michael Maas,

pursuant to Minn.Stat. § 260.221 (1982). Appellant contends that the trial court erred by not sufficiently considering the circumstances immediately preceding the termination hearing. We affirm.

## FACTS

Appellant is 28 years old and has had four children. The oldest daughter lives with appellant's parents, and another daughter lives with her natural father. Appellant has a third daughter, to whom her parental rights were terminated by Waseca County. Michael, who is the subject of this action, was born on May 3, 1982. He was removed from his mother's home and placed in foster care on August 26, 1982, and was found to be a neglected child on September 26, 1982. He has lived with his mother for only the first four months of his life.

Appellant has been married and divorced three times, with none of the marriages lasting much longer than a year. She has lived with many men, and has been through chemical dependency treatment at least three times. At the time of the hearing on the petition for termination, appellant had been sober for about two years.

In June or July of 1982, Ron Sprenger, appellant's boyfriend, moved in with Michael and Jan. In August, during a routine checkup, it was discovered that Michael had a broken arm and a broken rib. Because abuse was suspected, Michael was placed in foster care. Ron later admitted that he had injured Michael when he could not get him to stop crying. Appellant defended her boyfriend, saying that Michael was a "difficult" child and often got on Ron's nerves.

When the child was placed in foster care, he was at only the 10th percentile for weight of infants his age; when he was born he was at the 98th percentile. He suffered from a condition known as "failure to thrive." In foster care he immediately began to gain weight, and at the time of the termination hearing was a normal, healthy, slightly hyperactive child.

At the hearing on the neglect petition, appellant and her boyfriend were ordered to continue parenting classes with the Brown County Family Service Center, to undergo psychological evaluation and treatment, and to remain sober. They substantially complied with the order except that after one particularly stormy session with her psychologist, appellant refused to return for further analysis or treatment. After the guardian ad litem initiated a petition for the termination of appellant's parental rights, appellant resumed attendance at the counseling sessions.

At the hearing on the termination petition, testimony was heard from appellant and her boyfriend, the psychologist who performed the initial evaluations of the two, the psychologist who was seeing them weekly, the social worker, the foster parents, and the family services instructor. The court found that appellant's past behavior made her an unfit parent and that after adjudication of neglect she had failed or refused to correct the condition leading to neglect. In a memorandum with the decision the court noted that fifteen years of evidence should not be set aside for three weeks of good performance. Appellant's parental rights to Michael Maas were terminated and an appeal was taken.

## ISSUE

Did the trial court err in ordering a termination of parental rights pursuant to Minn.Stat. § 260.221(b)(2), (4), (5)?

## ANALYSIS

Parental rights may not be terminated unless the party seeking the termination can show clear evidence that a specific statutory ground for termination exists. Findings of fact by the trial court will not be overturned in a termination case unless clearly erroneous. *Matter of Welfare of Solomon*, 291 N.W.2d 364 (Minn.1980). There is a presumption that the natural parent is a fit and suitable person to be entrusted with the care of a child. The evidence relating to termination must address conditions as they exist at the time of

the hearing and which are likely to continue for a prolonged, indeterminate period. *Matter of Welfare of Chosa*, 290 N.W.2d 766 (Minn.1980). Finally, parental rights may not be terminated solely on the ground that it is in the best interests of the child to do so. *In re Linehan*, 280 N.W.2d 29 (Minn.1979).

■ The petition to terminate appellant's parental rights listed as grounds the factors contained in Minn.Stat. § 260.221(b)(2), (4), (5) (1982). Those factors were essentially unchanged by the 1983 amendment of the statute. Minn.Stat. § 260.221 (Supp. 1983). The petition charged that the parent had substantially and continuously or repeatedly refused or neglected to give the child necessary parental care and protection, the parent was unfit by reason of intoxication and other conduct detrimental to the physical and mental health of the child, and that the child had been adjudged neglected and reasonable efforts, under the direction of the court, had failed to correct the conditions leading to the adjudication. A court need find the existence of only one of the statutory factors in order to terminate parental rights. *Matter of R.M.M.*, 316 N.W.2d 538, 541 (Minn.1982).

Appellant argues that, in deciding to terminate her parental rights, the trial court relied upon conditions as they existed at the time of the neglect hearing, and not as they existed at the time of the termination hearing. Appellant claims that she has made substantial progress toward rehabilitation and that the trial court lacked evidence that she was permanently unfit as a parent.

Though it is true that appellant has been sober for two years, the prognosis of her future performance as a parent is poor. Several professionals testified to their judgment of the extent of appellant's improvement and the prospects of continued improvement in the future. One psychologist was unequivocally opposed to returning the child to his mother. He admitted, however, that he hadn't seen appellant in a year and would have to defer to those involved in her treatment. The social worker, the family service worker and the treating psychologist all admitted that appellant had made some improvement in the past month, but they expressed concern that appellant may have been merely acting as others wanted her to act so that she could get her child back. Finally, neither of the two psychologists who examined appellant believed that there would be any significant improvement in her ability to parent within two years. Rather, they estimated that it would be several years before sufficient personality changes would render her fit to be an adequate, full-fledged parent.

■ The trial court had before it a record of appellant's demonstrated inability to care for her previous children, evidence that Michael was not sustaining normal physical development, a history of appellant's chemical dependency, and an admission that appellant's boyfriend had physically abused the child as well as appellant's continued defense of her boyfriend's actions. This negative track record, coupled with the uncertainty of improvement in the future, leads us to conclude that the trial court did not err in terminating appellant's parental rights. The court reasonably found that the evidence showed a pattern of behavior which rendered appellant unfit as a parent and established that the prospects for substantial improvement in the future were not good. Though appellant's behavior may have improved somewhat in the month preceding the hearing, that minimal improvement was not enough to overcome the trial court's view that appellant's problems made her future performance as a parent uncertain.

## DECISION

The record of appellant's past behavior coupled with the uncertainty of improvement in the future supports the trial court's termination of appellant's parental rights.

Affirmed.