**In the Matter of the WELFARE OF B.C.**

**No. C3–84–454.**

Court of Appeals of Minnesota.

Oct. 9, 1984.

---

Lawrence Hammerling, Bradford Colbert (Student Atty.), Legal Assistance to MN Prisoners, Minneapolis, for appellant.

Thomas Foley, Ramsey County Atty., Kathleen R. Gearin, Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

Patrick Courtney, Asst. Ramsey County Public Defender, St. Paul, Atty. and Guardian Ad Litem for minor.

Considered and decided by LANSING, P.J., and WOZNIAK, and FORSBERG, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge

Appellant's parental rights were terminated February 13, 1984, based upon the trial court's finding, pursuant to Minn.Stat. § 260.221(b)(4) and (b)(7) (Supp.1983), that she is palpably unfit to be a parent to B.C., and that B.C. is a neglected child and in foster care. Appellant appeals from the order. We affirm.

## FACTS

Appellant resides in the reformatory for women in Shakopee, with four years left to serve, having been convicted of murdering her infant daughter T. on July 10, 1982. The baby died of massive head injuries. A pathologist's examination revealed scar tissue on the baby's head, indicating that the fatal beating was not the first beating.

Appellant has three other children. The eldest is a ward of the state; the other two—fourteen-year old D. and four-year old B.C.—are together in a foster home.

Although both children were adjudicated dependent and neglected children in 1982, B.C. alone is the subject of this action.

B.C. is characterized by his foster parents as a loving child who sometimes displays temper tantrums. His behavior changes significantly, however, after a visit with appellant in prison. He returns with a combative attitude: hitting, kicking, and biting others. This behavior usually lasts three to four days.

Additionally, when B.C. first entered foster care, he was significantly more delayed in his development than other children his age. B.C. has progressed somewhat during these two years in foster care, but he is still behind for his age. Both foster parents believe that termination of appellant's parental rights is in B.C.'s best interest.

## ISSUES

1. Did the trial court err in determining that appellant is palpably unfit to be party to the parent and child relationship?

2. Did the trial court err in determining that B.C. is a neglected child and in foster care?

3. Is Minn.Stat. § 260.221(b)(4) unconstitutionally void for vagueness?

## ANALYSIS

In a termination proceeding, the petitioner has the burden of proving a statutory ground for termination of parental rights by clear and convincing evidence. *Matter of Welfare of Rosenbloom*, 266 N.W.2d 888 (Minn.1978). This burden of proof is subject to the presumption that a natural parent is a fit and suitable person to be entrusted with the care of his child. *In re Dependency of Klugman*, 256 Minn. 113, 97 N.W.2d 425 (1959). This court will affirm a trial court's decision to terminate parental rights only when the evidence clearly mandates such a result in accordance with statutory grounds. *Matter of Welfare of Kidd*, 261 N.W.2d 833, 835 (Minn.1978).

### I.

Minn.Stat. § 260.221(b)(4) provides for the termination of a parent's rights to her child if it is found:

> That a parent is palpably unfit to be a party to the parent and child relationship because of a consistent pattern of specific conduct before the child or of specific conditions directly relating to the parent and child relationship either of which are determined by the court to be permanently detrimental to the physical or mental health of the child.

The fact that the parent is in prison cannot be enough in itself to render a parent palpably unfit and consequently warrant termination of parental rights. *In Re Staat,* 287 Minn. 501, 505, 178 N.W.2d 709, 712–13 (1970). But incarceration, together with other evidence such as the parent's incapability or lack of motivation to care for the child, may be the basis for such a decision. *Matter of Welfare of Walker,* 287 N.W.2d 642 (Minn.1979).

Appellant is in prison. She is in prison for murdering her baby daughter—her six-week old baby daughter T. The infant died of skull fractures—massive fractures of a size the examining doctor had never before seen in such a small baby—fractures which had to be accomplished with substantial force, fractures consistent with the impact of the skull on the floor or wall. Furthermore, T's skull was riddled with scar tissue, indicating she had been abused on more than one occasion during her short life.

Appellant is genuinely and deeply convinced she has no serious shortcomings as a parent, yet the evidence shows the contrary. Appellant explained the murder to a police officer saying, "The baby is lucky, she doesn't have to grow up in this world. People hurt people they love. She is better off in the hands of the Lord."

Experts claim appellant is psychologically disturbed. Her religious beliefs are said to border on delusional thinking; her perceptions of reality are distorted.

The trial court was correct in its conclusion that appellant is palpably unfit to be a parent. Given the fact that appellant is convinced she has no shortcomings as a parent, coupled with the tragic details of T's death, there is no other conclusion.

## II.

As a second ground for terminating appellant's parental rights to B.C., the trial court concluded that B.C. was a "neglected child and in foster care." Set forth below, in pertinent part, are the factors to be considered when making such a determination:

(1) The length of time the child has been in foster care;

(2) The effort the parent has made to adjust his circumstances, conduct, or condition to make it in the child's best interest to return him to his home in the forseeable future, including the use of rehabilitative services offered to the parent;

\* \* \* \* \* \*

(6) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time; \* \* \*

Minn.Stat. § 260.155, subd. 7 (1982).

The trial court addressed these factors and determined B.C. to be a neglected child and in foster care:

Because of her incarceration, her limited intellectual capacity, her psychological inability to face reality, and her unwillingness to admit her failures and problems as a parent, Respondent will not have the ability in the reasonably forseeable future to be a proper parent to [B.C.]. Neither does Respondent manifest the desire to be a proper parent for [B.C.] in the reasonably forseeable future based upon her unwillingness to view proposed therapy or services as necessary for her parenting instead of simply a process she must go through in order for her to help her son.

Clearly and convincingly, the best interests of [B.C.], both as a "now" child, and a "future" child, require that parental rights be terminated.

The record clearly substantiates these findings. The trial court had before it a record of appellant's demonstrated inability to care for her previous children, evidence that B.C.'s normal development was hindered by visits with appellant, and evidence that appellant is psychologically disturbed. The court reasonably found that B.C. is a neglected child and in foster care, specifically noting that terminating

appellant's parental rights is in B.C.'s best interests.

■ Although the best interest of the child is not enough to terminate a parent's rights with respect to that child, the interests of the parent and the child must be balanced. *Matter of Welfare of H.G.B.,* 306 N.W.2d 821, 827 (Minn.1981). Balancing the interests does not mean that the interests of the parent and the child are weighed equally. Instead, "both the interests of the parent and child are considered along with the circumstances of the particular case in an effort to determine which of these interests are to predominate." *Id.* at 826.

B.C. has been in foster care for two years. His progress, although not extensive, has been steady. This progress, however, has been sprinkled with setbacks—noticeable, alarming setbacks following visits with appellant.

The fact that appellant is in prison seems to have a very negative effect on B.C.: it confuses him, it disrupts his behavior, and it prevents permanency for B.C. The trial court concluded that these effects are all permanently detrimental to B.C.'s mental health and emotional development, and consequently it is in B.C.'s best interest to terminate the parent's rights.

■ This court is not unmindful of the interests appellant has in retaining her parental rights to her child, of the interests any mother has in maintaining custody of her child. These interests, however, do not outweigh B.C.'s interests in having the parental rights terminated.

### III.

Appellant attacks the palpably unfit section of the Minnesota Termination of Parental Rights Statute as unconstitutional on the grounds that it is void for vagueness. Appellant contends there is nothing in the statute from which an ordinary person could deduce what is or is not prohibited.

■ A statute should be upheld as against a void-for-vagueness challenge unless the terms are "so uncertain and indefinite that after exhausting all rules of construction, it is impossible to ascertain the legislature's intent." *Contos v. Herbst,* 278 N.W.2d 732, 746 (Minn.1979), *appeal dismissed sub nom, Prest v. Herbst,* 444 U.S. 804, 100 S.Ct. 24, 62 L.Ed.2d 17 (1979). Statutory language is impermissibly vague where "men of common intelligence must necessarily guess at its meaning." *St. Cloud Newspapers, Inc. v. District 742 Community Schools,* 332 N.W.2d 1, 7 (Minn.1983), quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 607, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973).

■ Minn.Stat. § 260.221(b)(4) is not uncertain; it is not indefinite. There is no need to guess at what sort of behavior is prohibited, to guess at the sort of behavior which would render a parent palpably unfit. The statute clearly requires proof of specific conditions over a period of time which are permanently detrimental to the child.

In light of the enormous developmental setbacks B.C. experiences after visits with appellant in prison, her incarceration is just such a condition. Appellant's psychological inability to face reality is also a specific condition which renders her palpably unfit. But most important to the characterization of appellant as palpably unfit is her conviction that she is indeed a good parent. She is unwilling to view proposed therapy as necessary or helpful. She does not have the true desire to be a proper parent. Without facing or accepting her problems as a parent, the chances of her ever improving are infinitesimal.

Minn.Stat. § 260.221(b)(4) is sufficiently definite so as to enjoy adequate interpretation in common usage and understanding. Appellant's behavior clearly falls within the bounds of that which is prohibited by this statute, and, therefore, she was correctly determined to be "palpably unfit."

### DECISION

The trial court did not err in terminating the parental rights of a mother convicted

and imprisoned for murdering another child, her infant daughter.

Affirmed.