In the Matter of the
**WELFARE OF J.L.L.**

No. C6-86-534.

Court of Appeals of Minnesota.

Nov. 25, 1986.

William E. Falvey, Public Defender, Margaret L. Arola, Sp. Asst. Public Defender, St. Paul, for appellant Father.

J. Thomas Mott, Asst. Public Defender, St. Paul, for guardian ad litem.

Tom Foley, Ramsey Co. Atty., Steven C. DeCoster, Asst. Co. Atty., St. Paul, for respondent Ramsey County Human Services Dept.

Considered and decided by POPOVICH, C.J., PARKER and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

The parental rights of both J.L.L.'s parents were terminated by a court order dated February 2, 1986. The father appeals, arguing that the evidence does not mandate termination. He contends that the trial court erred in relying on evidence of past abuse and failed to cite evidence of on-going abuse of the child by appellant at the time of the hearing; that the evidence does not support a finding that his present inability to assume complete parental responsibility will continue for a prolonged or indefinite period; and that reasonable efforts, under the direction of the court, were not made to correct the situation leading to the petition for termination of parental rights. We affirm.

## FACTS

J.L.L. was born on July 12, 1980, at which time his mother was 22 years old. His adjudicated father was then 37 years old. The parents were married in June of 1985.

Court involvement with the family began in June of 1983, when an emergency custody petition was filed. The petition was prompted by behavior of mother but included references to appellant, such as his chemical dependency and previous physical abuse of J.L.L. Appellant, who was incarcerated at Stillwater at the time, consented to the petition. J.L.L. was adjudicated neglected as to both parents. In August of 1983, custody was returned to mother. Following his release from Stillwater, appellant lived with mother and J.L.L. In August 1984, mother petitioned the court and received an order for protection against appellant based on physical abuse of her and J.L.L. The trial court found that appellant had beaten J.L.L. with a belt prior to the issuance of the restraining order. Appellant moved out of the home,

although he visited frequently during the following months.

J.L.L. was removed from mother's custody and placed in foster care on November 30, 1984. This followed an incident of physical abuse by mother that led to her conviction of assault. Appellant continued to visit his son until early August of 1985, when visitation was discontinued due to the child's negative reaction to the visits. J.L.L. remains in foster care.

A neglected and dependent child petition was filed, again including a reference to appellant's chemical dependency and physical abuse of the child. Appellant consented to the petition, and on April 3, 1985, while undergoing residential treatment for chemical dependency, signed a case plan outlining actions to be taken in order to return the child to the home. A later court order reiterated the case plan requirements, including one that both parents involve themselves in a program to address violence and physical abuse, complete a program of parent education and child development information, maintain sobriety and attend Alcoholics Anonymous meetings twice weekly.

Following his return from the treatment program, appellant made little, if any, progress in complying with the case plan or court order. He failed to maintain sobriety and failed to attend A.A. meetings as recommended. He has never attended parenting classes as required by the case plan. He states that he did understand in June or July of 1985, that failure to comply with the plan could result in termination of his parental rights. A termination petition was filed on October 3, 1985. He entered an alcohol and drug treatment program on December 16, 1985, and completed the inpatient phase on December 23. He enrolled in a program to deal with anti-social behavior on December 18, 1985. A hearing on the termination petition was held on January 6, 1986, and the court ordered termination of the rights of both parents. The mother does not appeal.

The trial court's findings regarding the present condition of J.L.L. were extensive:

[Appellant's] visits with [J.L.L.] from April through July [1985] caused [J.L.L.] to act out in a violent, agitated, and frenetic manner. He physically attacked objects and banged his head and began wetting himself two to three times per day. Later this aggressive, acting-out behavior became apparent after [J.L.L.] spoke to his father on the telephone. During at least one of those calls, [J.L.L.] reminded [appellant] of when he was little and "you hit me a lot."

\* \* \* \* \* \*

Because of [J.L.L.'s] continued limited attention span and very impulsive behavior, a trial medication period with Ritalin was begun with significant improvement demonstrated.

\* \* \* \* \* \*

[J.L.L.] suffers from a significant attention deficit disorder and from problems of overly aggressive behavior, and

A post-traumatic stress disorder as a result of the severe physical abuse inflicted upon him by his parents, and

Major emotional disabilities as a result of the foregoing trauma caused by that stress and abuse.

[J.L.L.] is, therefore, a special needs child requiring ongoing psychotherapy, medication, special school programming and competent, nurturing parents who can set limits on his behavior without repeating the pattern of prior abuse.

\* \* \* \* \* \*

During the past nine months, contact with [J.L.L.] by his parents has served only to aggravate his aggressive, acting-out behavior, his nightmares and his impulsive conduct.

## ISSUE

Did the trial court err in ordering a termination of appellant's parental rights pursuant to Minn.Stat. § 260.221(b)(2), (4), (5) and (7) (1984)?

## ANALYSIS

■ In termination of parental rights cases, the trial court must make clear and specific findings which conform to the statutory requirements contained in Minn.Stat. § 260.221. *In re the Welfare of A.K.K.*, 356 N.W.2d 337, 340 (Minn.Ct.App.1984). The trial court here based its decision on four of the seven conditions listed in the statute as the basis for termination of rights.

Specifically, the court found:

32. [The parents] are not now and will not in the foreseeable future be able to meet the needs [J.L.L.] has for special parenting skills as the result of the emotional harm he has suffered because of their prior, repeated abuse of him.

\* \* \* \* \* \*

Neither [parent] has the ability or demonstrated sincere desire to be a proper parent to [J.L.L.].

33. [The parents] have both repeatedly and substantially and continuously refused or neglected to comply with the duties imposed upon them by the parent-child relationship. They have damaged him physically and mentally and emotionally by their repeated, inexcusable physical abuse of him. They at all times have been physically able to learn to refrain from such conduct but have refused.

34. [The parents] have both demonstrated that they are palpably unfit to be parents to [J.L.L.] because of the consistent and repeated pattern, even after rehabilitative intervention by social services, of physical abuse inflicted by them upon him and of their consistent and repeated abusive dependency on chemicals and of the continuously violent nature of their relationship to each other and before the child. All of such conduct has clearly been permanently detrimental to the physical and mental and emotional health of [J.L.L.].

35. For several years, both before and during the direction of the Court, [the Ramsey County Community Human Services Department] and others at its request have made reasonable efforts to

correct the conditions that on more than one occasion have led to the determination of neglect and dependency herein. Those efforts have failed because of the refusal and neglect by [the parents] to cooperate in those efforts and participate in the offered and available services.

36. As to both [parents], [J.L.L.] remains a child who is neglected and in foster care.

We note initially that appellant does not contest the trial court's finding that J.L.L. is a special needs child, nor the determination that these special needs arose as a consequence of J.L.L.'s abuse by his parents. Appellant acknowledges his role in abusing J.L.L. The thrust of appellant's argument on appeal is that because the last incident of abuse occurred during the summer of 1984, nearly a year and a half before the termination hearing, the trial court was unable to cite evidence of abuse by appellant continuing until the time of the hearing. Instead, argues appellant, the trial court erroneously based its decision on past acts of abuse. We cannot agree.

■ Evidence relating to a termination decision must address conditions that exist at the time of the hearing. *In re the Welfare of Chosa*, 290 N.W.2d 766, 769 (Minn.1980). Although the court considered appellant's past acts of abuse of J.L.L., it also considered appellant's continuing problems with chemical abuse and violent behavior. These underlying problems related to abuse of J.L.L. and were addressed in both the case plan and subsequent court order. The court reviewed appellant's efforts to resolve these problems and to comply with the plan and order. The findings indicate that appellant had not taken effective steps to deal with chemical dependency, violent behavior and lack of parenting skills. Because these problems had not been resolved, underlying conditions leading to abuse continued to exist at the time of the trial. Therefore, contrary to appellant's assertions, the trial court's findings were based on the situation existing at the time of the hearing, not on past acts.

We also note that, following the last reported act of physical abuse of J.L.L. by appellant, there has been very little unsupervised contact between the child and his father. Shortly after the July, 1984, incident, appellant was in a residential chemical dependency treatment program and did not have contact with J.L.L. J.L.L. was placed in foster care in November of that year, and all contact after that time has been during supervised visits. The fact that eighteen months passed between the date of the last incident and the hearing without further acts of physical abuse must be considered in light of the nature of the contacts between father and son during that eighteen months.

■ Perhaps most importantly, appellant concedes that he is not now able to assume complete parental responsibility, impliedly recognizing that his lack of parenting abilities continues. However, he contends that he will be able to assume responsibilities in the near future. He points out that he has enrolled in the therapy group dealing with anti-social behavior and intends to obtain other counseling and training. We note appellant did not join the therapy group until a few weeks before the termination hearing, although he had signed the case plan over eight months earlier. The case plan and court order indicate that numerous other steps must be taken to address the problems identified as leading to the abuse and neglect of J.L.L. Although we commend appellant for the efforts he has made in seeking assistance, we must conclude that the progress evidenced is minimal when considered in light of the requirements that must be met to resolve the substantial underlying problems.

A critical issue in a termination proceeding is whether a parent is presently able and willing to assume his responsibilities. *Welfare of A.K.K.*, 356 N.W.2d at 341 (quoting *Matter of the Welfare of Clausen*, 289 N.W.2d 153, 156 (Minn.1980)). While appellant is willing and desires to provide a home for J.L.L., he recognizes that he is presently unable to do so. We conclude that the trial court did not clearly err in

finding that poor parenting would continue for an indeterminate time. *See In re the Welfare of J.K. and K.W.*, 374 N.W.2d 463, 466 (Minn.Ct.App.1985). A minimal improvement is not enough to overcome the conclusion that appellant's past problems make his future performance as a parent uncertain. *In re the Welfare of Maas*, 355 N.W.2d 480, 483 (Minn.Ct.App.1984).

The trial court based its findings on the assumption that appellant would be able to demonstrate appropriate parenting skills at some point in the future. However, the court also appropriately considered J.L.L.'s special needs and concluded:

> [J.L.L.] is at an age and a stage in his development where he needs the care, guidance and nurturance of a home, with protecting, loving adults who will not place him at the risk of physical abuse again. His best interests in being safe, protected and nurtured clearly outweigh the interests of [appellant] and [mother] in waiting an indeterminate time in the future to see when they can demonstrate their readiness to parent.

■ This court has recognized the propriety of balancing the interests of both parent and child in a termination matter. *In re the Welfare of Udstuen*, 349 N.W.2d 300, 304 (Minn.Ct.App.1984). Where the conditions of neglect and dependency will continue for an indefinite, prolonged period of time, the child's immediate need for a stable and permanent home may outweigh the father's desire to provide a future home. *Id.* at 305. After reviewing appellant's history of problems with chemical abuse, violent behavior and lack of parenting skills, and after considering the relatively few steps that appellant had taken by the time of the hearing to address these problems, the trial court concluded that it was not possible to determine when appellant would be able to assume parental responsibilities. The court balanced appellant's desire to provide a home for J.L.L. against the child's immediate and special

needs before concluding that appellant's parental rights should be terminated.

■ We are mindful of appellant's expressed and sincere desire to fulfill his responsibilities as J.L.L.'s father. We also recognize appellant's recent attempts to develop the ability to assume these responsibilities. However, in view of the child's special needs and the prolonged length of time appellant will need to develop appropriate parenting skills, we must conclude that the trial court did not err in its determination that the child's needs outweigh the interest of appellant.

■ Finally, appellant argues that there was a failure to make reasonable efforts, under the direction of the court, to correct the conditions that led to the determination that J.L.L. was neglected and dependent. This argument relates to the court's decision that termination of parental rights was appropriate under Minn.Stat. § 260.-221(b)(5). That sub-section allows termination to be based on a finding that:

> following upon a determination of neglect or dependency, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination.

A case plan and a court order outlined specific steps that the court felt were needed in order to correct conditions leading to the neglect and dependency of J.L.L. The case plan indicated that a failure to take the steps listed could result in a termination of parental rights, and the social worker assigned to the case indicated she explained this to appellant. Although appellant states he did not understand the relationship between the case plan and the possibility of termination of his rights at that time, the court found that appellant has known since the dates of the case plans in April and June of 1985 that "failure to comply would result in a petition to terminate parental rights."[1] It was at least five months later that he took action to enroll in

1. Appellant himself admits such knowledge in "June or July" 1985.

a program that would begin implementation of the plan. We also note that the social worker was available to assist appellant, although there was a period of time when she was unable to contact him because his whereabouts was unknown. In this instance, we must conclude that reasonable steps were taken to outline actions needed to correct existing conditions and that reasonable assistance was provided to appellant.

 Due to the special nature of termination proceedings, reviewing courts exercise great caution, finding that termination is proper only where the evidence clearly mandates such a result. *In re the Welfare of L.J.B.*, 356 N.W.2d 394, 397 (Minn.Ct.App.1984). However, a trial court may base its order to terminate parental rights on the finding that only one of the seven conditions listed in the statute exists. *Maas*, 355 N.W.2d at 483. Consequently, the decision here may be affirmed if there is substantial evidence which clearly mandates termination based on at least one of the four statutory conditions cited by the court as the basis for its decision. We find ample evidence to support each finding made by the trial court. Also, we again note that appellant's challenge on appeal is not so much to any trial court finding as it is to termination of his parental rights now when, in fact, he may be able to assume his parental duties in the future. It is in circumstances such as these that the trial court must sensitively balance a child's right to placement in a stable nurturing home against a natural parent's earnest plea to "wait a little longer." We believe the trial court properly balanced these factors. We, too, have balanced them and find no error in the trial court's determination.

## DECISION

The trial court did not err in ordering termination of appellant's parental rights.

Affirmed.