In the Matter of the
**WELFARE OF M.D.O.**

No. C3–89–1218.

Court of Appeals of Minnesota.

Jan. 30, 1990.

Review Granted March 22, 1990.

Thomas L. Johnson, Hennepin County Atty., Deonne Parker, Asst. County Atty., Minneapolis, for appellant.

William R. Kennedy, Hennepin County Public Defender, Barbara S. Isaacman, Benjamin A. Pittenger, Asst. Public Defender, Minneapolis, for respondent.

John Fitzgerald, Kuduk, Shoaps & Day, Minneapolis, for guardian ad litem.

Heard, considered and decided by KLAPHAKE, P.J., and PARKER and FOLEY, JJ.

## OPINION

PARKER, Judge.

Hennepin County appeals the denial of its petition to terminate the parental rights of Janet Ostlund to her three-year-old son, M.D.O. Ostlund was convicted of second degree murder after intentionally shaking her two-year-old adopted daughter, causing her death. We reverse.

## FACTS

Janet and David Ostlund adopted a 15–month–old undersized and developmentally delayed child, Maria, in September 1985. Between then and July 14, 1986, Maria suffered a fractured arm, a bloody mouth, and a black eye while in her mother's care. Janet Ostlund also was seen tossing a cloth ball in Maria's face, feeding her food that was inappropriately hot, and picking up Maria by one arm and shaking her.

On July 14, 1986, Ostlund brought Maria into the hospital with a severe brain injury, claiming that Maria had fallen off a couch and had struck her head on the linoleum floor. Maria died the next day. The state charged Ostlund with second degree murder, claiming that she killed Maria by intentionally shaking her.

In September, while awaiting trial, Ostlund gave birth to a son, M.D.O. The next day, Hennepin County filed a petition for legal custody and for dependency and neglect due to the allegation of second degree murder and the other abusive acts by Ostlund toward Maria prior to her death. On September 16, 1986, the juvenile court placed M.D.O. in foster care with supervised visitation by his parents. A case plan was prepared by the county which included the goal of getting the "Parents to provide a reasonable explanation of the death of Maria consistent with the medical findings."

In January 1987 a jury convicted Janet Ostlund of second degree murder, and she was sentenced to 105 months in prison. On appeal, this court affirmed the jury verdict and the supreme court denied further review. *State v. Ostlund*, 416 N.W.2d 755 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Feb. 24, 1988).

In July 1987 Hennepin County filed a petition to terminate Ostlund's parental rights. A Juvenile Court judge granted the county's motion in limine, precluding Ostlund from relitigating the issue of whether she killed Maria by shaking.

On December 19–29, 1988, trial was held on the termination petition before a second Juvenile Court judge, who denied the state's petition. The court found that there was no pattern of abuse by Ostlund prior to Maria's murder. In August 1989 M.D.O. was placed in the custody of his father who, in the interim, had divorced Janet Ostlund.

## ISSUES

1. Did the trial court clearly err in finding no consistent pattern of abuse by Ostlund prior to the murder of her adopted daughter?

2. Does a consistent pattern of abuse culminating in the murder of a child, coupled with a lack of rehabilitation, constitute, as a matter of law, statutory grounds sufficient to require termination of parental rights?

## DISCUSSION

The standards of review in termination cases are well settled:

(1) Standards emanate from the statutory preference to reunite the parent and child whenever possible.

(2) Great appellate court caution is to be exercised in reviewing these cases and only some deference given to the trial court findings.

(3) The trial court's decision must be supported by clear and specific findings.

(4) We must be mindful of the petitioner's burden to prove its allegations by clear and convincing evidence.

(5) The trial court must find that one or more conditions enumerated in the statute support termination. In addition,

(a) termination is not to be chosen except for grave and weighty reasons, and (b) conditions of concern must continue to exist at the time of the hearing and it must appear they will continue for a prolonged and indeterminate period, and (c) when there is a record of long-term foster care characterized by continuous failures in reasonable efforts to reunite the child and parent, the child's best interests are a paramount consideration in the case. *See In re Welfare of M.G.*, 407 N.W.2d 118, 120–21 (Minn.Ct.App.1987) (citing pertinent decisions of the Minnesota Supreme Court).

*In re Welfare of S.N.*, 423 N.W.2d 83, 87 (Minn.Ct.App.1988).

Overall, the reviewing court's function is to determine whether the juvenile court judge's findings are supported by substantial evidence and not clearly erroneous. *In re Welfare of Clausen*, 289 N.W.2d 153, 156 (Minn.1980).

## I

■ The petition to terminate was brought under two sections of Minn.Stat. § 260.221 (1988). Subdivision 1(b)(2) requires a continuous pattern, by the parent, of refusing or neglecting to comply with parental duties. Subdivision 1(b)(4) requires that the parent be found "palpably unfit" to be a parent because of a "consistent pattern of specific conduct before the child or of specific conditions directly relating to the parent and child relationship" that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the needs of the child.

The trial court's finding that there was no consistent pattern of abuse of Maria while she was in Ostlund's care is contrary to the evidence admitted at Ostlund's criminal trial, a transcript of which was admitted into evidence at the termination petition hearing. *See State v. Ostlund*, 416 N.W.2d 755 (Minn.Ct App.1987), *pet. for rev. denied* (Minn. Feb. 24, 1988). This constitutes clear error. More to the point, it is contrary to the holding of this court in the criminal appeal.

In that opinion this court, reviewing the admissibility of evidence of the several injuries sustained by Maria while in Ostlund's ten months of care, stated:

> The fact that these injuries occurred while Maria was in appellant's [Ostlund's] care is clear and convincing evidence of appellant's participation.

*Id.* at 764.

The Juvenile Court's "puzzlement" with the above holding appears to have led to the finding of no pattern of abuse and, we believe, error. "Findings of fact which are controlled or influenced by error of law are not final on appeal and will be set aside." *In re Trust of Holden*, 207 Minn. 211, 227, 291 N.W. 104, 112 (1940). On the basis of this court's opinion in *State v. Ostlund*, we hold as a matter of law that there was clear and convincing evidence of a consistent pattern of abuse by Ostlund that culminated in the murder of her two-year-old adopted daughter. We believe this to be the law of the case.

## II

The county, upon the birth of M.D.O., immediately moved for removal of the child from Ostlund's custody and Ostlund refused to cooperate with any case plan proposed by the county. Ostlund has justified her refusal to cooperate with the case plan on the ground that it was not court-ordered. Faced with "stonewalling," the county decided not to follow through with the dependency petition it had filed. Trying to avoid long-term foster care, it proceeded with this termination petition.

The parties and the trial court focused on the prospect of continued long-term foster care. However, now that M.D.O. is in his father's custody, this court is faced with quite a different situation. The best interests of the child, always an important factor, are crucial here. We are considering the parental rights of a mother who, during the time she was carrying this child, subjected her daughter Maria to a pattern of abuse culminating in her murder and who has not to this day admitted her culpability for that murder. This child's safety is paramount.

Ostlund presented evidence from psychologists and psychiatrists that it was not necessary for her to admit that she killed Maria before she can begin to benefit from therapy. *In re Welfare of J.W.*, 415 N.W.2d 879 (Minn.1987), involved the parents of a neglected child who refused to cooperate with a case plan which, like that proposed here, required the parents to give an explanation of the death of another child while in their care. The trial court had found the death to be intentionally caused by the parents. The parents refused to give an explanation, citing their fifth amendment privilege against self-incrimination. The supreme court stated:

> While the state may not compel therapy treatment that would require appellants [the parents] to incriminate themselves, it may require the parents to otherwise undergo treatment. Therapy, however, which does not include incriminating disclosures may be ineffective; and ineffective therapy may hurt the parents' chances of regaining their children.

*Id.* at 883.

Ostlund has not yet, due to her lack of cooperation with the county, undergone a psychiatric evaluation. She still refuses to acknowledge her culpability in the death of her child even though she has no fifth amendment problem of self-incrimination, since appeals of her criminal conviction have been exhausted. *Cf. Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973) (fifth amendment privilege is relevant where answers to official's questions might incriminate an accused in a future criminal proceeding). Under these circumstances, she cannot undergo sufficiently effective therapy to achieve rehabilitation adequate to afford a reasonable degree of safety to M.D.O., and that fact must affect her parental rights here. *See In re Welfare of C.K.*, 434 N.W.2d 925, 926 (Minn.1989). In *C.K.* the supreme court reversed a trial court's denial of a termination petition, citing deficiencies in the trial court's findings of fact detailed in the supreme court's first hearing of the case. Chief among the cited deficiencies was a lack of facts found by the trial court showing compliance with rehabilitative case plans and successful completion of rehabilitative treatment. *In re Welfare of C.K.*, 426 N.W.2d 842, 848–49 (Minn.1988). Similarly, there is no finding of rehabilitation in this case.

Ostlund also presented, as evidence of her current fitness to be a parent, testimony of prison employees and psychotherapists who observed her supervised visits with M.D.O. at the prison where she is incarcerated. This court has noted that such evidence was wholly unpersuasive where a father had cited the lack of acts of physical abuse of a child in the 18 months before a termination petition was heard. *In re Welfare of J.L.L.*, 396 N.W.2d 647 (Minn.Ct.App.1986). This court stated that the lack of abuse "must be considered in light of the nature of the contacts between father and son during that eighteen months," referring to the fact that "there has been little unsupervised contact" during that time period. *Id.* at 651. Similarly, these supervised visits, in a prison setting, prove little in light of the danger which may be facing this child.

We hold, as a matter of law, that Ostlund is palpably unfit, for the reasonably foreseeable future, to be a party to the parent and child relationship; this is due to the consistent pattern of abuse prior to the murder of her daughter Maria and her continuing refusal to admit to the intentional assault resulting in the death of her child, which refusal prevents her rehabilitation.

## DECISION

The trial court clearly erred in denying the petition to terminate Janet Ostlund's parental rights. We reverse and order termination.

Reversed.

KLAPHAKE, Judge (dissenting).

I would not reverse.

I agree with the majority that Hennepin County (County) demonstrated Janet Ostlund's consistent pattern of abuse toward her adopted daughter. However, I disagree with the conclusion that this pattern

renders Ostlund unable to care for M.D.O. for the reasonably foreseeable future or renders her palpably unfit to parent.

The juvenile court found that Ostlund was observed to exhibit good parenting skills during her numerous supervised visits with M.D.O. The court also found that mother and child had established "a warm bonded relationship." More significantly, the court found Ostlund had shown "a marked propensity to take advantage of and profit from" the therapy and counseling programs available to her, including parenting classes. The trial court concluded that the County failed to establish by clear and convincing evidence that "any potential abuse by respondent [Ostlund] is expected to remain a problem for a prolonged, indeterminate period of time."

Although Ostlund was incarcerated at the time of the termination hearing, Minnesota courts have consistently held that incarceration alone is not enough to warrant termination of that person's parental rights. *See In re Welfare of Staat*, 287 Minn. 501, 505, 178 N.W.2d 709, 712–13 (1970); *In re Welfare of B.C.*, 356 N.W.2d 328, 331 (Minn.Ct.App.1984).

Unlike the parents in *In re Welfare of Clausen*, 289 N.W.2d 153, 156 (Minn.1980), cited by the majority, Ostlund has not failed to undertake therapy under the direction of the court. Significantly, the termination of parental rights in that case proceeded after the juvenile court had determined the child was neglected or dependent and that all reasonable efforts under the direction of the court had failed to correct the conditions leading to the determination. Here, the County dismissed the neglect and dependency petitions and proceeded directly with a petition to terminate parental rights. A court-directed rehabilitation program was never established. The only "rehabilitation program" Ostlund failed was one unilaterally established by the County. In fact, it was less of a plan designed to reunite Ostlund and M.D.O. than to obtain an admission of guilt from Ostlund while she was exhausting her appeal rights. In addition, a psychiatrist, two licensed consulting psychologists and Dr. ten Bensel testified that in this case an admission of guilt was not a necessary first step for the receipt of therapy. The majority's conclusion that under these circumstances Ostlund cannot undergo sufficiently effective therapy to achieve rehabilitation is unwarranted.

Only one previous appellate case in this state has ordered termination of parental rights. *In re Welfare of C.K.*, 434 N.W.2d 925 (Minn.1989). That case decided by the Minnesota Supreme Court came only after a remand to the trial court for further proceedings. It involved a prior dependency and neglect adjudication and a court-ordered case plan. The facts there included abuse by both parents of all of the children involved in the termination. The children had been in foster care for four years. Forty different juvenile orders had been issued. The abuse included placing of chains around the necks of the children while requiring them to stand on a stool, threatening to kick the stools out from under them, hanging a child from a belt and chain, holding a knife to a child's throat, beating children with belts, placing of children outside without clothes in minus eighty degree windchill and sexual abuse. There rehabilitative efforts had failed because of absconding from initial treatment and a total failure to address the sexual abuse issue at the end of a six month treatment program. There, a long history of chemical dependency had not been addressed. The facts here don't approach those in *C.K.*

This is not a situation demanding immediate termination of parental rights. M.D.O. is not languishing in foster care since M.D.O. is currently living with his father. The majority's decision in my view is an unwarranted rush to judgment.