*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0052**

In the Matter of the Welfare of the Child of: T. S. C. and D. E. D., Parents.

**Filed June 8, 2015
Affirmed
Reilly, Judge**

Blue Earth County District Court
File No. 07-JV-14-2773

Thomas K. Hagen, Jason C. Kohlmeyer, Rosengren Kohlmeyer Law Office Chtd., Mankato, Minnesota (for appellant D.E.D.)

Patrick R. McDermott, Blue Earth County Attorney, Susan B. DeVos, Assistant County Attorney, Mankato, Minnesota (for respondent Blue Earth County Human Services)

Michael Mountain, Mountain Law Office, Mankato, Minnesota (for respondent T.S.C.)

Susan Kohls, St. Peter, Minnesota (guardian ad litem)

Considered and decided by Halbrooks, Presiding Judge; Reilly, Judge; and Willis, Judge.[*]

# UNPUBLISHED OPINION

**REILLY**, Judge

Appellant-father challenges the termination of his parental rights to his infant daughter, arguing that the district court erred by determining that he failed to rebut the

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

statutory presumption that he is palpably unfit to parent. Because a statutory ground for termination exists and termination is in the child's best interests, we affirm.

## FACTS

Mother T.S.C. and father D.E.D. are the biological parents of I.R.D., born June 19, 2014. A medical screening of I.R.D. following her birth revealed the presence of methamphetamine. I.R.D. was placed in foster care after her birth and has continued to reside in foster care. D.E.D.'s parental rights to a son were involuntarily terminated in March 2013. He was incarcerated in April 2014 for first-degree burglary and second-degree assault.

In August 2014, the Blue Earth County Human Services Department (the county) filed a petition to terminate T.S.C.'s and D.E.D.'s parental rights to I.R.D. on the grounds that T.S.C. and D.E.D. are palpably unfit to parent I.R.D. and that I.R.D. is neglected and in foster care. T.S.C. consented to the termination of her parental rights, and a trial as to D.E.D.'s parental rights was held in November 2014. The district court subsequently issued an order terminating D.E.D.'s parental rights to I.R.D. The district court determined that D.E.D. did not rebut the statutory presumption, applicable due to his prior involuntary termination of parental rights, that he is palpably unfit to parent I.R.D. The district court further determined that termination of D.E.D.'s parental rights is in I.R.D.'s best interests and that the county proved by clear and convincing evidence that a statutory ground for termination exists. This appeal followed.

**D E C I S I O N**

Whether to terminate parental rights is discretionary with the district court. *In re Welfare of Child of R.D.L.*, 853 N.W.2d 127, 136-37 (Minn. 2014). While a reviewing court conducts a close inquiry into the evidence, the reviewing court also gives "considerable deference" to the district court's termination decision. *In re Welfare of Children of S.E.P.*, 744 N.W.2d 381, 385 (Minn. 2008). The reviewing court will affirm the termination of parental rights if "at least one statutory ground for termination is supported by clear and convincing evidence and termination is in the child's best interests." *In re Welfare of Children of R.W.*, 678 N.W.2d 49, 55 (Minn. 2004). A decision that termination is in the child's best interests is reviewed for an abuse of discretion. *In re Welfare of Children of J.R.B.*, 805 N.W.2d 895, 905 (Minn. App. 2011), *review denied* (Minn. Jan. 6, 2012).

*A Statutory Ground for Termination*

A district court may involuntarily terminate parental rights if one or more of nine conditions exist. Minn. Stat. § 260C.301, subd. 1(b) (2014). One such condition is that the

> parent is palpably unfit to be a party to the parent and child relationship because of a consistent pattern of specific conduct before the child or of specific conditions directly relating to the parent and child relationship either of which are determined by the court to be of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental, or emotional needs of the child.

*Id.,* subd. 1(b)(4). It is typically presumed "that a natural parent is a fit and suitable person to be entrusted with the care of his or her child." *In re Welfare of A.D.*, 535 N.W.2d 643, 647 (Minn. 1995).

But "[i]t is presumed that a parent is palpably unfit to be a party to the parent and child relationship upon a showing that the parent's parental rights to one or more other children were involuntarily terminated . . . ." Minn. Stat. § 260C.301, subd. 1(b)(4). The parent then has the burden to rebut this presumption by introducing evidence that would justify a finding of fact that he is not palpably unfit. *In re Welfare of Child of J.W.*, 807 N.W.2d 441, 445-46 (Minn. App. 2011) (noting that whether this burden has been satisfied is determined on a case-by-case basis), *review denied* (Minn. Jan. 6, 2012). The parent "must affirmatively and actively demonstrate her or his ability to successfully parent a child" and is "required to marshal any available community resources to develop a plan and accomplish results that demonstrate the parent's fitness." *Id.* at 446 (quotations omitted); *see also R.D.L.*, 853 N.W.2d at 137 (stating that the parent must produce enough evidence to support a finding that he is suitable to be entrusted with the care of the child). The parent "must do more than engage in services and must demonstrate that his or her parenting abilities have improved." *J.W.*, 807 N.W.2d at 446 (quotations omitted).

At trial, D.E.D. called Lieutenant Lori Wacha, who served as D.E.D.'s case manager during part of his incarceration. Lieutenant Wacha testified that D.E.D. was participating in or had completed various programs while in prison, including chemical-dependency treatment, completion of his GED, 12-step meetings, and classes dealing

with anger management, domestic violence, conflict resolution, socialization, criminal thinking, family, parenting, relationships, and financial management. Lieutenant Wacha also testified that D.E.D. had been selected for and was participating in a program where inmates train dogs to be used as service animals. She stated that she was not aware of any programming available to D.E.D. that he did not take advantage of during his incarceration. Lieutenant Wacha admitted that she has never seen D.E.D. interact with a child.

D.E.D. testified that he completed inpatient chemical-dependency treatment in 2013 following a release from jail, moved to a halfway house, and then began using chemicals again and failed to complete his aftercare program, which led to a revocation of probation and his incarceration. He was incarcerated before I.R.D.'s birth and stated that he had never seen her in person. But he testified that he believes he will be able to properly parent I.R.D. and remain chemical free upon release from prison. He also stated that he will look for employment and will be reliant upon his family for support and I.R.D.'s care.

D.E.D. argues on appeal that his participation in programming while incarcerated justifies a finding of fact that he is not palpably unfit to parent I.R.D. We disagree that D.E.D.'s involvement in programming within the structured prison environment is sufficient to rebut the statutory presumption that he is palpably unfit to parent. The trial testimony indicated that D.E.D. took classes on broad topics such as family, parenting, and relationships, but the testimony did not elaborate on any skills that D.E.D. learned to enable him to provide daily care for I.R.D. D.E.D. provides no support for his claim that

5

his role training dogs to be used as service animals "consists of the same principals to parenting a child." D.E.D. testified at trial that he would rely on his family to help him care for I.R.D., but he did not call any family members to testify as to their willingness to provide care for I.R.D. And while D.E.D. met the requirements of chemical-dependency treatment while incarcerated, he also previously completed inpatient chemical-dependency treatment and then went back to using chemicals.

D.E.D. compares his situation to that in *J.W.*, where this court reversed a district court's determination that appellant-mother failed to rebut the presumption of palpable unfitness. 807 N.W.2d at 446-47. J.W. had introduced her own testimony and the testimony of 14 other witnesses to demonstrate that she had made significant and material changes since her previous termination proceedings. *Id.* at 446. The trial testimony indicated that J.W. had successfully participated in supervised visitation with her children, parenting classes, and behavioral therapy and that she had a stable living environment and support network. *Id.* Since D.E.D.'s previous termination proceedings, he completed inpatient chemical-dependency treatment, began using chemicals again, failed to complete his aftercare program, had his probation revoked, and was incarcerated. D.E.D.'s situation is readily distinguishable from that of J.W.

We note that the fact that a parent is in prison does not itself render him palpably unfit to parent. *See In re Welfare of B.C.*, 356 N.W.2d 328, 331 (Minn. App. 1984). But D.E.D. failed to present evidence at trial that he has the skills or a plan to successfully parent I.R.D. On this record, the district court did not err by determining that D.E.D. failed to rebut the presumption that he is palpably unfit to parent I.R.D.

6

*The Best Interests of the Child*

The child's best interests are the paramount consideration in a termination proceeding. Minn. Stat. §§ 260C.001, subd. 2(a), .301, subd. 7 (2014). A child's best interests may preclude a termination of parental rights even when a statutory basis for termination exists. *In re Welfare of Child of D.L.D.*, 771 N.W.2d 538, 545 (Minn. App. 2009). Best-interests analysis requires consideration of the child and parent's interests in preserving the parent-child relationship and of any competing interests of the child. Minn. R. Juv. Prot. P. 39.05, subd. 3(b)(3); *see also J.R.B.*, 805 N.W.2d at 905 ("Competing interests [of the child] include such things as a stable environment, health considerations[,] and the child's preferences." (quotation omitted)).

I.R.D. is about one year old and has resided in foster care since her birth. D.E.D. has no relationship with I.R.D. given that he was incarcerated before her birth and has never seen her in person. D.E.D. has a history of substance abuse and of committing violent criminal acts. Termination will allow I.R.D. to be adopted into a family that can meet her needs and provide her a safe and stable home. The district court did not abuse its discretion by determining that termination of D.E.D.'s parental rights is in I.R.D.'s best interests. Because a statutory ground for termination is supported by clear and convincing evidence and termination is in I.R.D.'s best interests, we affirm the termination of D.E.D.'s parental rights to I.R.D.

**Affirmed.**

7