## Welker's Adoption

*W. E. Shaffer*, for petitioner.

HIPPLE, P. J., January 31, 1944.—On October 29, 1943, Arthur W. Bartley presented a petition for the adoption by him of Virginia Mae Welker, a minor, and an order was made designating a hearing thereon for November 12, 1943, at 10 a.m. This petition was joined in by the natural mother of the minor, Kathryn V. Bartley. Written notice of the presentation of the petition and the time fixed for the hearing was given to Robert L. Welker, natural father of the minor, by registered mail. The hearing was held on November 12, 1943, at which time petitioner and the natural mother of the child sought to be adopted appeared with witnesses in their behalf. The natural father did not appear, being confined in the State Penitentiary for Western Pennsylvania. From the testimony taken and the exhibits filed we find the following facts:

1. Petitioner is a citizen of the Commonwealth of Pennsylvania. He was at the time of the hearing and is now in the United States Army stationed at Fort Benning, Ga. Prior to his induction into the armed forces he resided at Jacksonville, Centre County, Pa. He is the husband of Kathryn V. Welker, having been legally married to her on August 28, 1943.

2. Kathryn V. Bartley was formerly married to Robert L. Welker, the natural father of the minor, and the minor, Virginia Mae Welker, was born October 7, 1941, in Lamar Township, Clinton County, Pa., where she and the minor were living with the parents of Kathryn V. Bartley. The minor has been in the care and custody of her natural mother ever since her birth on October 7, 1941.

3. The natural father of the child is now serving sentences in the State Penitentiary for Western Pennsylvania, imposed upon two indictments, nos. 48 and 49, October sessions, 1941, to each of which he entered a plea of guilty.

The indictment to no. 48, October sessions, 1941, charged robbery by violence, and the indictment to

no. 49, October sessions, 1941, charged him with assault with a deadly weapon causing bodily injury dangerous to life. Upon the first indictment he was sentenced, in addition to a fine of one dollar and the costs of prosecution, to undergo imprisonment in the Western Penitentiary of Pennsylvania for a term of not less than 10 years, nor more than 20 years, to be computed from August 19, 1941, and upon the second indictment he was sentenced to a term of not less than 3½ years nor more than 5 years in the Western Penitentiary of Pennsylvania, to run concurrently with the sentence imposed at no. 48, October sessions, 1941. These sentences were imposed on August 29, 1941, about one month and a half prior to the birth of Virginia Mae Welker, the minor sought to be adopted.

4. Subsequent to the imposition of the sentences upon Robert L. Welker, his wife, Kathryn V. Welker, instituted divorce proceedings in Clinton County, Pa., and on November 13, 1942, a decree of divorce was granted her.

5. The consent of the natural father, Robert L. Welker, to the proposed adoption has not been given, although he was requested to give it. While he was not present at the hearing, he addressed two communications to the court, in neither of which does he consent to the adoption.

6. The welfare of the child sought to be adopted would be definitely promoted by the proposed adoption. Petitioner is of good reputation in the community in which he lives, he is financially and morally able to provide a good home for the child, and both he and his wife, the natural mother of the child, urged the court to decree the adoption of the minor by petitioner.

7. Petitioner, joined by his wife, the natural mother of the child, desires to change the name of the child, if the adoption were allowed, to Virginia Mae Bartley.

*Discussion*

The court is clearly of the opinion that the welfare of the child would be benefited by the adoption. The petition is presented under the Act of April 4, 1925, P. L. 127, as amended by the Act of July 2, 1941, P. L. 229, sec. 1, 1 PS §2, which provides in paragraph (*c*) that the consent of the parents to an adoption is necessary, but "the consent of a parent . . . who has abandoned the child, is unnecessary, provided such fact is proven to the satisfaction of the court or judge hearing the petition, in which case such court or judge shall so find as a fact". Petitioner insists that, because of the crimes committed by the natural father, his pleas of guilty thereto, and his incarceration in the Western State Penitentiary as a result of the sentences imposed upon him, there has been in effect an abandonment by him of the minor child within the meaning of the act above quoted, and stresses the fact that these crimes were committed before the birth of the child; that the natural father has not seen the child, nor has he contributed in any way whatsoever to its support or to the support of the mother. The offense committed by the natural father was a most serious one. He freely admitted that he went into the store known as Otto's Auto Shop on Bellefonte Avenue, Lock Haven, Pa., on August 18, 1941; that he struck the manager of the store, Don Herr, on the head with the barrel of a "Savage" rifle three or four times; that he struck Mr. Herr twice after Mr. Herr was knocked to the floor and took from him two wallets containing money. The injuries suffered by Mr. Herr were serious and might have resulted in his death. The natural mother testified that, prior to the arrest of her husband, he maintained or supported her only in part, and she was required at times to work in order to obtain money for her maintenance.

Unless the minimum sentence of 10 years imposed upon the natural father is commuted and he should be

paroled, he will not in all probability see his daughter until 1951, at which time the child will be 10 years of age and will not know the natural father to be her father. It is argued that the father knew, or should have known, the likely consequences of the crimes he committed; that he would suffer imprisonment for a considerable length of time in a penal institution, and, because he himself had no estate, one of the consequences would be that he would be placed in a position where he could neither care for nor support the child, and therefore that there was in fact an abandonment by the father within the meaning of that term as used in the act of assembly.

We are forced to the conclusion that this position is not tenable and that the mere fact of imprisonment for as long a period as 10 years resulting from the position in which the natural father voluntarily put himself is not an abandonment within the meaning of that term.

Petitioner's counsel has not cited to us, nor has our independent investigation discovered, any cases in the appellate courts or in the lower courts in which this precise question has been considered, except the case of Adoption of Julia Ann Grabowski, 24 Westm. L. J. 162, in which Copeland, P. J., refused to decree an adoption against the consent of the natural father, even though the natural father had murdered his wife, the mother of the minor there involved, and was at the time serving a life sentence in the Western State Penitentiary.

The question of what constitutes abandonment has been discussed in various cases. Thus in Weinbach's Appeal, 316 Pa. 333, 339, the Supreme Court stated that "the statutory notion of abandonment does not necessarily, we think, imply that the parent has deserted the child, or even ceased to feel any concern for its interests. It fairly may, and in our judgment does, import any conduct on the part of the parent which

evinces a settled purpose to forego all parental duties and relinquish all parental claim to the child."

In the case of Adoption of Elizabeth McCann, 104 Pa. Superior Ct. 196, 209, that court held that:

"The word 'abandon' is defined by Webster: 'To relinquish or give up with intent of never again resuming or claiming one's rights or interests in; to give up absolutely, to forsake entirely; to renounce utterly; to relinquish all connection with or concern in; to desert, as a person to whom one is bound by a special relation.' In Booth v. Van Allen, 7 Phila. 401, it is defined: 'To forsake entirely; to renounce and forsake; to leave with a view never to return.' The definition in 1 C. J. 3 is: 'To renounce all care or protection of; totally to withdraw ourselves from an object; to lay aside all care for it; to leave it altogether to itself.' "

And in Hazuka's Case, 345 Pa. 432, 435, the Supreme Court stated: "Abandonment may occur in a number of ways. It may be effected by a formal legal instrument or merely by conduct evincing a settled purpose to forego all parental duties and relinquish all parental claims. It is a matter largely of intention to be ascertained from the circumstances, and whether or not a child has been abandoned is a question of fact."

It is true that the manifestation of an intention to abandon may be repented of and in a proper case parental rights may again be acquired, including the statutory right to prevent adoption by withholding consent, and if by any course of reasoning it could be held that commission of the offenses by the natural father, and the sentences imposed upon him imprisoning him for a considerable period of time, would in fact be considered as an abandonment, particularly since the offenses were committed before the birth of the child, and the natural father must have known that he would be subject to a severe punishment in view of the nature of the offenses, we would have no hesitancy whatever in so holding.

The mere fact that failure to support the minor child is due to the imprisonment of her natural father does not of itself show that he has abandoned the child, and the burden is upon petitioner to establish the fact of abandonment by the natural father.

This in effect is the reasoning in Buckley Estate, 348 Pa. 311 (decided January 3, 1944), with relation to the right of a husband undergoing imprisonment at the time of the death of his wife to elect to take against her will. By reason of his persistent criminal record and the serving of a sentence at the time of the audit in his wife's estate, the Supreme Court held that the burden shifted to the husband to establish that there had been no desertion or nonsupport, and stated (p. 312) that "the burden was therefore placed upon the husband to establish that during the *intervening periods of freedom from imprisonment* the husband did in fact support his wife, and that his failure to support his wife for a year or upwards previous to her death was not wilful neglect or refusal to provide for the wife, but *was due solely to his incarceration.*" (Italics supplied.) Failure of the natural father in this instance to support his child and inability to have her live with him, or otherwise provide for her, is due solely to his present incarceration in the Western State Penitentiary.

There are some States which allow adoption under circumstances similar to those in this matter, but in such States there is legislation which make conviction and imprisonment an exception to the rule requiring consent by a natural parent or parents. There is no such legislation in Pennsylvania, and as President Judge Copeland held in Adoption of Julia Ann Grabowski, supra, "the conviction of crime and imprisonment thereof is not within the meaning of abandonment as used in the laws relating to adoption, and such imprisonment can only be made an exception to the rule requiring the parent's consent by an Act of the Legis-

lature. Since the Legislature has named certain exceptions to this rule, only those exceptions can be made by the courts".

The only exceptions to the rule requiring the consent of a natural parent are that the consent of a parent who has been adjudged a lunatic, or an habitual drunkard, or who has abandoned the child is unnecessary.

Abandonment is a matter of intention, and must be clearly proved, and in the absence of the consent of the natural father of Virginia Mae Welker there is no evidence upon which to base a finding that he has actually abandoned the child. The witnesses called in behalf of petitioner testified not only that petitioner was a law-abiding citizen, and that his moral character was of the best, but that the adoption by him of the minor child would be to her best interests. Under all the circumstances we agree with this, and we are reluctant to refuse the decree. However, as stated we can find no authority for construing the word "abandonment" as used in the act to cover a situation such as is here shown, and therefore we are obliged to refuse the prayer of petitioner. However, it must be clearly understood that in so doing we are not in any manner determining the question of the custody of the minor child, either now or in the future. That is an entirely different question, and can arise only when and if the natural father might at some time in the future endeavor to secure possession of the child. If that question arises the court will take into consideration the facts, the circumstances and the criminal record of the natural father as affecting his right even to see the child.

## Decree

And now, January 31, 1944, after hearing and careful consideration, it is ordered and decreed that petition for the adoption of Virginia Mae Welker be and the same is hereby dismissed at the cost of petitioner.