219 So.2d 317 (1969)
In re the STATE of Louisiana in the Interest of Milton L. SHARP, III.
No. 7527.
Court of Appeal of Louisiana, First Circuit.
January 27, 1969.
Guy L. Deano, Jr., Covington, for appellant.
Lucas S. Conner, Jr., Baton Rouge, for appellee.
Before LANDRY, REID and SARTAIN, JJ.
SARTAIN, Judge.
The respondent, Milton L. Sharp, Jr., appeals from a judgment of the district court which declared his son Milton L. Sharp, III, abandoned and eligible for adoption. These proceedings were instituted by the State Department of Public Welfare (Department) under the provisions of LRS 9:401-407.
Milton L. Sharp, III, was born on July 18, 1966 of a marriage between respondent and Lillian White Sharp. The child's mother was killed in August of 1967. Shortly thereafter respondent obtained the custody of this child from its maternal grandmother. On at least three occasions respondent made individual arrangements with other persons to care for *318 his infant son. On each occasion it was necessary that the child be removed either because of the illness of the adult or as in the last instance the illness of the child. This then led respondent to look to the Department for assistance. On January 20, 1967 respondent entered into a voluntary agreement with the Department whereby the custody of the child was entrusted to the Department for an indefinite period. Under this agreement the respondent agreed to keep the Department informed as to his whereabouts, discuss plans for the child with the Department, pay to the Department $25.00 per month for the care of the child, give to the Department seven days notice of any plan to remove the child from the Department's care, and consented to any medical or surgical care for the child if necessary. Correspondingly, the Department agreed to accept the child and give it the best care available, provide a reasonable plan for visitation by the father with the child, not to place the child where it cannot supervise its care, not to permit the taking of the child from the state, nor offer the child for adoption as long as the agreement is in force, and agreeing to return the child to the father on seven days notice "if this agreement is in force at the time". The agreement was dated January 19, 1967.
This action was instituted on November 2, 1967 and a hearing was first set for November 20, 1967 but was later continued and actually heard on December 7, 1967. During the period of time from January 20, 1967 to November 2, 1967 the father had only made three of nine payments of $25.00 or the total sum of $75.00 to the Department for the care of the child. The last payment was made on April 18, 1967. The record indicates that on several occasions respondent called the Caseworker with the Department and apologized for either being late with a payment or for not making a payment. However, no payment was made after April 18, 1967.
Respondent was employed for the most part of this time, first by Prestressed Concrete Company where he first earned $2.00 an hour but was later raised to $2.30 per hour. He voluntarily terminated this employment on July 21, 1967. He later worked for Asplundah Service Company from August 17, 1967 through September 26, 1967 at an hourly wage of $1.40 per hour. There is some dispute as to whether or not respondent actually worked full time for these employers. Our evaluation of the testimony is that he did in fact work a substantial portion of the time and the record indicates insufficient reasons for his failure to pay the $25.00 per month. Respondent contends that he was sick most of this time and was unable to work. He resided with his father and did not have expenses for room and board.
Respondent last visited with his child in March of 1967. However, the child was out of the state on a vacation with its foster parents in the month of June. In September respondent went to the office of the Department and requested a visit for October 8, 1967. He was advised that the foster parents were to be out of town on that date but that he could visit the next weekend. Apparently he did not make that visit.
On October 8, 1967 Mr. Sharp remarried and shortly thereafter went to the office of the Department and was advised that the Caseworker was not in. He contends that the purpose of this visit was to ask for the custody of his child. This is corroborated by the testimony of his wife.
From January 20, 1967 to November 2, 1967 respondent resided with his father at Route 1, Folsom, Louisiana. The letter from the Department in May asking for permission by the foster parents to take the child from the state on vacation was addressed to and received by respondent at his father's address. He was served with a copy of these pleadings at the same address.
The Caseworker admitted that no demand was made upon respondent for the arrearages that had accumulated in the *319 amount he had agreed to contribute towards the support of his child. The Caseworker did mention to Mr. Sharp in September or early October when he visited with her that she had discussed abandonment proceedings with the district judge.
Respondent, his wife and mother-in-law urge their desire to regain the custody of the child and their ability to properly care for it.
On these facts the trial judge determined that a decree of abandonment was justified.
We are of the opinion that the facts in this case do not justify a decree of abandonment thus forever severing the parental ties between respondent and his child and that the judgment of the trial court is erroneous and should be reversed.
LRS 9:403(A) reads as follows:
"A. If any child has been deserted for a period of at least four months by his parent and the whereabouts of his parent are unknown and the parent has made no provision for the child's care, or the parent has refused to provide for the care and support of the child for a period of at least four months under circumstances showing an intention to permanently avoid all parental responsibilities, the child shall, after proceedings as hereinafter set forth, be considered an abandoned child. However, this Part shall not be construed to require physical care of a child by a parent to whom custody has been denied or from whom custody has been removed by a court of competent jurisdiction." (Emphasis ours)
The pertinent portions of this statute are as above emphasized and it is clear to us that the whereabouts of the respondent were at all times known to the Department and that the conduct of the respondent was not such as would clearly evidence an intention to permanently avoid all parental responsibilities.
This is not in defense of respondent because the record does not justify his failure to pay the monthly sum of $25.00 nor does the record justify only three visits by him with his child during a nine month period. These factors more properly bear on the respondent's fitness for the child based on his apparent lack of interest which might give rise to a petition for neglect under appropriate juvenile statutes but fall far short of the harsh and irrevocable remedy of abandonment. When respondent made arrangements with the Department for the care of his child it certainly was not his intention at that time to avoid any parental responsibility. The necessity of this arrangement is not disputed.
In summary we find that for a period of six months the respondent failed to support or to visit with his child. However, on two occasions when visitation was possible the child was out of town. These would be the months of June and September.
In the recent case of In re State in the Interest of Fischbein, 194 So.2d 388 (4th La.App., 1967) our brethren of the Fourth Circuit held that whereas the father and mother had both acted irresponsibly toward the children and neither had fully discharged the duties of parenthood the evidence did not support a verdict of abandonment. The case insofar as the mother was concerned was limited to her refusal to pay the sum of $15.00 per month for the support of the children. It also recites: (194 So.2d 388, 393)
"Mere failure to pay child support or refusal to pay, even when ordered by a court, is not of itself sufficient cause to justify a decree of abandonment. The crucial part of section 403 is the phrase, `under circumstances showing an intention to permanently avoid all parental responsibilities.' The interpretation given this section by the proponents of this action ignores this phrase, which was included in the sentence to qualify the refusal to provide care and support. Child support is but one element of parental responsibility, and its failure does not necessarily imply an intent to avoid all parental responsibility.

*320 We can think of no more harsh decree than one which forever separates a child from his parents and destroys all legal ties between them. The exercise of this authority which strikes at a most sacred relationship is one which should be exercised by the court with extreme caution. All reasonable doubt should be resolved against it and only in those cases where the evidence clearly shows the manifestation of an intent permanently to avoid parental responsibilities should it be exercised. Failure or even refusal of support can be, and often is, explained and justified; and the jurisprudence of this State has recognized this fact. In re LaFitte, 247 La. 856, 174 So.2d 804 (1965); In re Ackenhausen, 244 La. 730, 154 So.2d 380 (1963); In re Hughes, 176 So.2d 158 (La.App.4th Cir. 1965). It was never intended by the legislature that failure to support alone, apart from all other factors bearing upon intent, should be cause for a decree of abandonment."
In re State In the Interest of Vines and Walton, 130 So.2d 445 (2d La.App., 1961) a decree of abandonment by The Juvenile Court, Parish of Caddo was affirmed where the children had been entrusted to the care of the Department for more than four years during which time neither the children's mother nor her husband manifested any interest in their welfare or made any effort to support them. The opinion clearly reflects that repeated efforts were made by the Department to elicit some plan from the parents for the support and the care of the children. The opinion also indicates that the original placement of the children was not voluntary as in the instant matter but was the result of neglect on the part of the mother to provide proper and sufficient care for the children.
The provisions of our abandonment statutes, like those of adoptions, must be strictly construed. A decree of abandonment may only be entered where the evidence clearly shows manifestation of an intent to permanently avoid parental responsibility and all reasonable doubt should be resolved against entering such a decree.
Accordingly, for the above and foregoing reasons the judgment of the district court ordering and decreeing the child, Milton L. Sharp, III, abandoned and placing him in the care and custody of the Department of Public Welfare of the State of Louisiana is annulled and set aside in its entirety.
No costs of court are assessable against any party to a petition in the juvenile court, except in adoption proceedings. LRS 13:1585.
Judgment annulled and set aside.