IN RE WELFARE OF JOSEPH STAAT AND ANOTHER.
HENNEPIN COUNTY WELFARE DEPARTMENT v.
JERRY STAAT.

178 N. W. (2d) 709.

July 3, 1970—No. 42404.

*Smith, Marino & Becker,* and *Luther A. Granquist,* for appellant.

*George M. Scott,* County Attorney, and *Susanne C. Sedgwick,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Nelson, William P. Murphy, Otis, and James F. Murphy, JJ.

NELSON, JUSTICE.

This is an appeal from an order terminating the parental rights of Jerry Staat, father of Joseph and Paul Staat. The only question before this court is whether the evidence sustains the trial court's findings upon which the order was issued pursuant to Minn. St. 260.221(b) (1, 3).

502

The matter came on for hearing October 1, October 13, and October 31, 1969, in Hennepin County District Court—Juvenile Division—before the Honorable Lindsay G. Arthur, on the Hennepin County Welfare Department's petition to terminate the parental rights of Cynthia M. Staat, mother, and Jerry Lee Staat, father, to Joseph and Paul Staat.

On October 31, 1969, the trial court made the following findings:

"1. The following facts are true as to the Child or Children named above:

"The mother is unable to care for the children now or in the foreseeable future. The father, who is incarcerated at St. Cloud with possible parole in April, 1970 proposes to raise the children after release and marriage. He currently has no candidate for marriage nor any certainty of employment. In the past he has demonstrated far less interest than possible in the children.

"2. Such facts prove the following grounds of termination of parental rights under Statute 260.221.

"Mother for good cause consent[s] in writing.

"Abandonment by father.

\* \* \* \* \*

"Basic care continuously refused; by father."

The facts upon which the court based its decision are as follows: Joseph and Paul Staat were born February 22, 1967, to Cynthia Staat, who was at the time of their birth incarcerated in the State Reformatory for Women. Jerry Staat, the father, has been incarcerated in the State Reformatory for Men since December 7, 1967, serving a 0- to 5-year sentence for unlawful possession of narcotics. His sentence is due to expire in August 1971. He appeared before the Adult Correction Commission in April 1970, and it is this court's understanding that the hearing was continued until August 1970.

Jerry has had a history of violations of the law and has served sentences in various correctional institutions. On one occasion

during parole from a sentence at the Minneapolis Workhouse, he absconded from the supervision of his parole officer.

The Staat children were conceived in April 1966. The record is not clear whether or not Jerry was incarcerated during this period. However, during this time Cynthia had been dating another man and suspected that Jerry might not be the father of the twins, and in August 1966 she wrote a letter to her husband informing him he was not their father. At the time of trial, however, she stated that the children were her husband's. Jerry does not now dispute this fact.

Jerry never saw the twins prior to his present sentencing in December 1967. He also denied paternity, stating to his parole officer during the summer of 1967 that he could not have been the father of the children since he was not around at the time of conception. He was in fact dating another woman who was pregnant by him. When his wife asked him in November 1967 if he was concerned over the children, he replied he was going to be a father with this girl friend.

From the time of their birth in February 1967 until September 1968, the twins were in foster placement. Cynthia attempted to care for them during a 6-week period commencing in September 1968. They were returned to foster care until February 1, 1969, whereupon Cynthia again attempted to care for them. Finding herself unable to provide proper care, she returned the children to the Hennepin County Welfare Department, which again placed them in foster care. Since the time of their birth until the time of the hearing, the twins had lived with their mother on these two occasions and had lived in four foster homes.

Jerry has seen his children only once.[1] Cynthia had to request special permission for this visit, since Jerry was using his regular visiting hours to see his girl friend. Prior to June 1969 he had never requested visits with his wife and children. He testified that after seeing his children he realized he was their father.

---

[1] The date was either September 1968 or June 1969.

Jerry stated that he requested the Salvation Army to send the children a Christmas gift in 1968 and he also testified he sent one birthday card. However, his wife claimed that her husband did not send any birthday cards or Christmas presents.

Jerry has adjusted well at the reformatory. He has not been a disciplinary problem. He graduated from high school in June 1969 and has been head inmate in the institution's store. If paroled, he intends to enroll at the Minneapolis Vocational School. He stated that his plans for his children were to assume their custody when he was financially able, which, in his estimation, would be a minimum of 6 months following parole. However, the vocational program he had discussed with a Hennepin County Welfare Department worker would cover a period of at least a year and a half. This means it would be about another 2 years before he could assume custody of his children.

Minn. St. 260.221(b) sets out five grounds for termination of parental rights other than consent. The portions thereof referred to in the termination findings are:

"(1)   That the parents have abandoned the child; or

\*   \*   \*   \*   \*

"(3)   That, although the parents are financially able, they have substantially and continuously neglected to provide the child with necessary subsistence, education, or other care necessary for his physical or mental health or morals or have neglected to pay for such subsistence, education or other care when legal custody is lodged with others."

There is no evidence in the present case indicating that Jerry refused basic care for his children. A prerequisite for a violation of § 260.221(b)(3) is that the parents are financially able. In the instant case, the state has not proved Jerry's financial ability to care for his children. In fact, the Hennepin County Welfare Department caseworker stated:

"\*   \*   \* There has never been any support as such from either [of the] parents because of their economic situation."

In justifying an order terminating parental rights of a natural parent, a clear and specific finding which conforms to the statutory conditions for termination is of critical importance. See, In re Petition of Zerby, 280 Minn. 514, 160 N. W. (2d) 255. Since this was done in the present case with respect to a finding of basic care continuously refused, we can only assume that the court found as a fact that this ground was present, although we express doubt that this is a ground upon which the court's conclusion could be based. There is no evidence upon which termination under this ground could be justified. It was not even stated as a statutory ground in the welfare department's petition for termination of parental rights. Perhaps the finding was the result of a clerical error. In any event, the evidence does not sustain the finding that Jerry Staat, although financially able, refused basic care for his children.

With respect to the finding that Jerry abandoned his children, he contends that imprisonement per se is not sufficient to constitute abandonment. We agree with this contention.

This court has not yet defined the term "abandonment" as it is used in § 260.221. However, the term has been defined in child-abandonment cases. Thus, in State v. Clark, 148 Minn. 389, 391, 182 N. W. 452, 453, we stated:

"We think there is an abandonment when the desertion is accompanied by an intention to entirely forsake the child. There must be an intention to sever the parental relation and wholly throw off all obligations that spring from it."

Although the Clark case involved the crime of child abandonment, its definition is similar to the definition of abandonment used in parental-rights termination cases and cases involving adoption without consent in other jurisdictions. Thus, in Stalder v. Stone, 412 Ill. 488, 107 N. E. (2d) 696, 35 A. L. R. (2d) 653, the court stated that abandonment in adoption cases means conduct on the part of a parent which evinces a purpose to relinquish all claims to the child and to forego all parental duties. See,

also, In re State ex rel. Sharp (La. App.) 219 So. (2d) 317; Annotation, 35 A. L. R. (2d) 662, 665. Implicit in this definition is that there must be an intentional abandonment. This requirement also appears in In re Adoption of Anderson, 189 Minn. 85, 248 N. W. 657, wherein this court reversed a decree of adoption on the grounds that there had been no consent to adoption and the evidence did not sustain a finding that the mother *intended* to abandon her child.

Thus, since an intention to forsake the duties of parenthood must be present before abandonment can be found, it necessarily follows that a separation of child and parent due to misfortune and misconduct alone, such as incarceration of the parent, does not constitute intentional abandonment. See, In re Adoption of Jameson, 20 Utah (2d) 53, 432 P. (2d) 881; State v. Grady, 231 Ore. 65, 371 P. (2d) 68; Welker's Adoption, 50 Pa. D. & C. 573.

However, although imprisonment per se is not sufficient to constitute abandonment, the fact of imprisonment may combine with other factors, such as parental neglect and a withholding of parental affection, so as to lend support to a finding that the parent has relinquished all parental claims to his child and thereby has abandoned him. We think that the evidence in the instant case is sufficient to support a finding of abandonment by Jerry Staat. Until recently, and for a substantial portion of the children's lives, Jerry has refused to acknowledge his fatherhood. For a 10-month period beginning with the birth of the twins in February 1967 until December 1967, there is no evidence indicating that he visited them or even asked about them, even though he was not incarcerated at the time. There was no evidence offered to indicate Jerry held a job or supported his family during that period. Cynthia testified that even after his incarceration her husband asked her not to visit him because he would prefer to use his visits for his girl friend rather than for his wife and children. There is no evidence that Jerry was interested in the children's whereabouts during their period of foster

placement. So far as is shown by the evidence, Jerry has not inquired of the welfare of the children by correspondence with anyone. We deem one visit of about 2 hours with his children and one Christmas present and a birthday card an insufficient showing of his interest in his children.

We realize it is difficult to maintain a healthy parent-child relationship when a parent is confined to a penal institution. However, if a parental relationship existed prior to a father's imprisonment and he continued this relationship to the best of his ability during incarceration through letters, cards, and visits where possible, and through inquiry as to his children's welfare, his parental rights would be preserved, both because of his actions and for the benefit of his children. This was not the case here.

An examination of all the surrounding facts and circumstances requires us to conclude that the lower court could infer an intent to abandon in the present case. Accordingly, its finding of abandonment is sustained by the evidence, regardless of whether the standard of proof required for that finding is a preponderance of the evidence or clear and convincing proof.

It is therefore apparent that the trial court based its decision to terminate parental rights to Joseph and Paul Staat on specific statutory grounds supported by ample evidence. The trial court obviously concluded that the best interests of the children involved would be served by committing their guardianship and legal custody to the commissioner of public welfare.

The order of the district court—juvenile division—is affirmed.

Affirmed.