In the Matter of the WELFARE
OF L.A.F.

No. C4–95–1740.

Court of Appeals of Minnesota.

April 16, 1996.

Review Granted June 19, 1996.

Michael J. Long, Theis & Long, P.A., Glencoe, for Appellant Richard Daily.

Jeanne M.V. Conkel, Gavin, Olson, Conkel & Savre, Ltd., Glencoe, for Respondent L.A.F.

Wright S. Walling, Minneapolis, for Respondent Kathleen J. Foley.

Considered and decided by KLAPHAKE, P.J., TOUSSAINT, C.J., and MULALLY, J.*

## OPINION

KLAPHAKE, Judge.

Appellant Richard Daily challenges termination of his parental rights to L.A.F. for abandonment and refusal or neglect to comply with his parenting duties. *See* Minn.Stat. § 260.221, subd. 1(b)(1)–(2) (1994). Because we conclude that the record does not support the court's finding of abandonment and that there was no social service agency involvement as is required for termination for refusal or neglect to comply with parental duties, we reverse.

## FACTS

L.A.F. was born on September 26, 1993. Soon after birth, L.A.F. was placed in a foster home, and three months later she was placed in a pre-adoptive home where she now resides. Her parents, appellant Richard Da-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

pointment pursuant to Minn. Const. art. VI, § 10.

ily and respondent Kathleen Foley, cohabitated from approximately August 1992 to May 1993. The couple split up when Foley was five months pregnant and spoke on the telephone only twice before L.A.F.'s birth.

During her pregnancy, Foley contacted the Stearns County branch of Caritas Family Services of Catholic Charities (Caritas), a licensed adoption agency, because she considered placing her child in an adoptive family. On August 10, 1993, Foley's pregnancy counselor at Caritas, Jane Marrin, sent a letter to Daily informing him that he was named as a possible father of Foley's unborn child and that Foley planned an adoptive placement. The letter also informed Daily of procedures for termination of his parental rights, requested that he not contact Foley, and asked him to refer all "questions and concerns" to Marrin.

Daily learned of L.A.F.'s birth through third parties. He telephoned Foley on the day of L.A.F.'s birth and requested to see the child. Foley denied the request and referred him to Marrin. Four days after L.A.F.'s birth, Daily contacted Marrin and arranged for visitation, which occurred on October 8, 1994. Daily later testified that he recognized L.A.F. as his own child at that time. Daily claimed he made two additional requests for visitation, which were denied by Marrin.

When L.A.F. was only one month old, Marrin and Foley contacted Stearns County to initiate termination proceedings. On November 15, 1993, Foley petitioned for termination of parental rights for both herself and Daily in Stearns County. The December 3 hearing was continued after Daily appeared alone, objected to the petition, and stated he wished to initiate a paternity action. At the December 29 hearing, Foley withdrew the termination petition after Daily requested a court-appointed attorney.

Daily had contacted a number of attorneys near the time of L.A.F.'s birth to represent him in a paternity action, and all declined for various reasons. These reasons included Daily's very limited financial resources, limitation in the attorneys' practice areas, and problems caused by the parties living in Nicollet County, Stearns County, and McLeod County. According to Daily, he wished to resolve the issue of his paternity before he decided how to proceed in the proposed adoption because he was uncertain whether he was L.A.F.'s father. Through various discussions with attorneys, Daily believed that he could not demand visitation until he was legally determined to be L.A.F.'s father and that paternity blood tests could not be conducted until L.A.F. reached 6 months of age. In October 1993, Nicollet County appointed attorney James Hulwi to represent Daily.

In late 1993, Hulwi assisted Daily in filing an affidavit of intention to retain parental rights with the Minnesota Department of Health. The affidavit could constitute conclusive evidence of parenthood under Minn. Stat. § 259.51 (1994) unless Foley denied Daily's parenthood, which she did. Daily received notice of Foley's denial on January 12, 1994.

L.A.F.'s pre-adoptive parents began adoption proceedings in early 1994, and a hearing was held on May 19, 1994. Daily appeared and requested a blood test to determine paternity. The court apparently continued the action and instructed Daily to commence a paternity action by June 2, 1994.[1]

On May 23, 1994, Hulwi was again appointed in Nicollet County to represent Daily in a paternity action. Hulwi filed a complaint on Daily's behalf on May 26, 1994. Foley denied the complaint and successfully objected to venue, which was transferred to McLeod County on June 27, 1994.[2]

On September 15, 1994, Foley initiated this termination action in McLeod County. After the court ordered that paternity blood tests be completed before the termination action could proceed, Daily took a blood test. The

---

1. There is no documentary evidence in the record regarding the adoption proceedings, but the trial court took judicial notice of the proceedings.

2. There is also no documentary evidence in the record regarding the Nicollet County paternity action, but the trial court took judicial notice of the proceedings.

parties stipulated to his paternity at the termination hearing.

After the two-day hearing on March 14–15, 1995, the court ordered termination of Daily's parental rights for abandonment and refusal or neglect to comply with parental duties. The court also found termination to be in L.A.F.'s best interests. Foley, Marrin, and L.A.F.'s guardian ad litem testified in support of terminating Daily's parental rights. Daily, his sister, and his school counselor testified in opposition to termination.

On August 15, 1995, Daily appealed the July 10,¹ 1995 termination order. This court dismissed the appeal as untimely. The supreme court reversed in the interests of justice, and on December 1, 1995, this court reinstated the appeal.

## ISSUE

Did the trial court err in terminating Daily's parental rights to L.A.F.?

## ANALYSIS

■ A natural parent is presumed to be a "fit and suitable person to be entrusted with the care of his child." *In re Welfare of Clausen*, 289 N.W.2d 153, 156 (Minn.1980). Despite this presumption, "the best interest[s] of the child standard [is a] paramount consideration in termination of parental rights proceedings." *In re Welfare of J.J.B.*, 390 N.W.2d 274, 279 (Minn.1986); *see In re Welfare of M.D.O.*, 462 N.W.2d 370, 375 (Minn.1990). To terminate parental rights the state must establish a statutory basis by clear and convincing evidence. Minn.Stat. § 260.241, subd. 1 (1994); Minn. R. Juv. P. 59.05.

■ The standard of review in parental termination cases requires the appellate court to consider

whether the trial court's findings address the statutory criteria, whether those findings are supported by substantial evidence, and whether those findings are clearly erroneous.

*M.D.O.*, 462 N.W.2d at 375. An appellate court may conduct de novo review of a trial court's legal conclusions, including an "independent review of the record." *Hammer v.*

*Investors Life Ins. Co.*, 511 N.W.2d 6, 8 (Minn.1994).

The trial court based its termination of Daily's parental rights on two statutory grounds: abandonment and refusal or neglect to comply with parental duties. *See* Minn.Stat. § 260.221, subd. 1(b)(1)–(2) (1994). Proof of only one of the statutory grounds is required for termination. *Id.* § 260.241, subd. 1.

### Abandonment

■ A court may presume abandonment exists if

(i) the parent has had no contact with the child on a regular basis and no demonstrated, consistent interest in the child's well-being for six months; and

(ii) the social service agency has made reasonable efforts to facilitate contact, unless the parent establishes that an extreme financial or physical hardship or treatment for mental disability or chemical dependency or other good cause prevented the parent from making contact with the child.

*Id.* § 260.221, subd. 1(b)(1). Even if the presumption is not met, "[t]he court is not prohibited from finding abandonment." *Id.* at subd. 1(b)(1)(ii). Although the statute does not define "abandonment," the courts construe it as "an intention to forsake the duties of parenthood." *In re Welfare of Staat*, 287 Minn. 501, 506, 178 N.W.2d 709, 713 (1970).

■ While there is no real dispute regarding the essential facts of this case, the parties vehemently dispute the conclusions to be drawn from those facts. The court found that "Daily's actions towards L.A.F. during all phases of her development clearly evidence abandonment." The court based this finding on Daily's limited contact with L.A.F., his failure to assume parenting responsibilities, and his failure to provide for L.A.F. Our independent review of the record leads us to the conclusion that Daily did not abandon L.A.F. and that the court's findings on this issue are unsupported by substantial evidence and clearly erroneous.

The break-up of the parents' relationship was premised on Daily's belief that he was

not L.A.F.'s father. After one visit with L.A.F. and concluding that he was her father, Daily claims to have made two further attempts to visit L.A.F. Foley and Marrin firmly denied Daily further visitation. Marrin denied Daily visitation under the imprimatur of state agency authority. Foley concurred. *Cf. In re Petition of Linehan,* 280 N.W.2d 29, 33 (Minn.1979) (court declined to terminate father's parental rights when his "derelictions" were due, in part, to mother's actions); *Staat,* 287 Minn. at 506, 178 N.W.2d at 713 (separation of child and parent due to "misfortune" does not constitute abandonment). Thus, Daily's failure to visit L.A.F. cannot be used as a basis for finding abandonment.

Daily also twice asserted his paternity of L.A.F. He filed an affidavit of intention to retain parental rights, which would have conclusively established his parenthood if Foley had not objected. *See* Minn.Stat. § 259.51 (1994). He also asserted the paternity action in Nicollet County when L.A.F. was nine months old, at which Foley successfully objected to venue.

■ Daily's alleged failure to parent L.A.F. is explained both by his uncertainty as to his paternity and by the efforts of others who effectively blocked his attempts to assert paternity, without which he was emphatically denied the right to visit or otherwise parent L.A.F. Additionally, the record is replete with references to Daily's impoverishment, which contradicts any finding of abandonment based on his failure to provide for L.A.F. *See In re Welfare of W.R.,* 379 N.W.2d 544, 549 (Minn.App.1985) (poverty of parent rarely, if ever, sufficient ground for termination), *review denied* (Minn. Feb. 19, 1986).

■ Finally, we note the strong efforts made by Daily to protect legally, rather than forsake, his parental rights. Daily appeared at numerous paternity, termination, and adoption proceedings in three counties of this state, despite his impoverishment and, many times, lack of legal representation. Because of the grave consequences to the parties, we exercise "great caution" in terminating parental rights. *In re Welfare of A.D.,* 535 N.W.2d 643, 647 (Minn.1995) (quoting *In re*

*Welfare of Kidd,* 261 N.W.2d 833, 835 (Minn. 1978)). On this record, Daily's actions do not amount to clear and convincing evidence required to establish his abandonment of L.A.F.

### Refusal or Neglect to Comply with Parental Duties

■ Termination based on a finding of refusal or neglect to comply with parental duties is appropriate where

the parent has substantially, continuously, or repeatedly refused or neglected to comply with the duties imposed upon that parent by the parent and child relationship, including but not limited to providing the child with necessary food, clothing, shelter, education, and other care and control necessary for the child's physical, mental, or emotional health and development, if the parent is physically and financially able, *and* reasonable efforts by the social service agency have failed to correct the conditions that formed the basis of the petition.

Minn.Stat. § 260.221, subd. 1(b)(2) (1994) (emphasis added). Thus, termination for refusal or neglect to comply with parental duties must be coupled with failure of reasonable efforts by the social service agency. *Id.*

Here, the record supports the trial court's finding that there was no social service agency involvement. As the court also found, the efforts of Caritas, the adoption agency, were directed solely toward its goal of facilitating the adoption of L.A.F.

■ The trial court nevertheless waived the requirement of social service agency involvement because Daily was not legally adjudicated to be L.A.F.'s father until commencement of this termination action. We decline to adopt this restrictive interpretation of the statute. Termination proceedings apply to a "parent" defined as "the birth or adoptive parent of a minor." Minn.Stat. § 260.015, subd. 11 (1994). By initiation of a termination action against Daily, he was assumed to be, although not legally adjudicated to be, L.A.F.'s parent. As such, he was entitled to the full protections of the termination statute, including social service agency involvement. Such protections are absolutely necessary when, as here, the bases for

termination include allegations of failure to parent, failure to visit, and failure to provide for a child. The first termination action in this case was brought less than two months after L.A.F.'s birth, and immediately thereafter Daily attempted to admit paternity. A social service agency could have neutrally and properly assessed Daily's status and needs as a parent at that time. Under these unique facts, we decline to exempt Daily from the statutorily-mandated social service agency involvement that applies to any parent who is a party to a termination proceeding.

## DECISION

The trial court erred in terminating appellant Richard Daily's parental rights to L.A.F. for abandonment, where the record did not support the trial court's finding. The court erred in terminating Daily's parental rights for refusal or neglect to comply with parental duties, where no social service agency efforts were offered to him.

**Reversed.**