**In the Matter of the CHILDREN OF Richard WILDEY.**

No. A03–262.

Court of Appeals of Minnesota.

Sept. 30, 2003.

Sherri D. Hawley, Saint Paul, MN, for appellant.

Thomas Richards, Buffalo, MN, for children.

Kathleen Heaney, Sherburne County Attorney, Mark J. Miller, Assistant Sherburne County Attorney, Arden Fritz, Assistant Sherburne County Attorney, Elk River, MN, for respondent.

Barbara Onken, Sherburne County Government Center, Elk River, MN, guardian ad litem.

Kris Lund, CR, Sherburne County Government Center, Elk River, MN, court reporter.

Considered and decided by RANDALL, Presiding Judge, HALBROOKS, Judge, and HUDSON, Judge.

## OPINION

RANDALL, Judge.

On appeal in this termination-of-parental-rights proceeding, appellant-father, who is incarcerated, argues (a) the county failed to make reasonable efforts to reunite the family and the district court's reliance on *In re Welfare of L.A.F.*, 554 N.W.2d 393 (Minn.1996) to rule that such efforts were not required, misreads the case; (b) the record does not support the determination that father abandoned his children where the county failed to give father the information necessary to contact his children; (c) the record does not support the determination that father failed to abide by the duties of being a parent and the district court's ruling on this point was improperly based on its determination that termination was in the children's best interests, rather than on the relevant statutory criteria; (d) the record does not support the determination that the children are neglected and in foster case where father took advantage of the services offered to

him; and (e) the record does not show that termination is in the children's best interests. The district court and the county social services improperly placed too much weight on appellant's incarceration. Because the best interests of the child are paramount in termination of parental-rights proceedings, we conclude that the district court did not abuse its discretion when it terminated appellant's parental rights.

## FACTS

Appellant Richard Wildey and Kristi Karels are the biological parents of A.A.W., born November 5, 1997, and J.L.W., born May 20, 1996. Appellant and Karels are not and have never been married. Appellant lived with the children and Karels from 1996 (when J.L.W. was born) until early 1999, during which time he assisted in the daily care of the children. In early 1999, appellant was asked to leave the home because of relationship problems between him and Karels. Appellant continued to see the family on weekends and provided some money when needed until he was incarcerated April 6, 2000. Appellant has never been the primary custodian or caregiver for the children, and he last saw his children on March 23, 2000.

Appellant was taken into custody on April 6, 2000, for burglary and for a probation violation for a prior conviction for the sale of methamphetamine. He has been continuously in jail or prison since that date and is currently serving a sentence for a felony burglary offense committed in Eau Claire County, Wisconsin. Appellant has not seen the minor children in at least three years, and has had no direct contact with them since March 2000. His earliest possible release date from prison is October 2005.

On October 5, 2001, the court placed the minor children in foster care due to neglect and methamphetamine use by their mother. On or about November 1, 2001, appellant received a written notification from Sherburne County Social Services of the existence of a child-protection case involving the minor children. This letter informed appellant that: (1) he was entitled to notice of the proceedings and copies of all pleadings; (2) he was entitled to participate in the proceedings; and (3) inquired about Native American heritage. At trial, appellant testified that he received this notification, but never responded, claiming that Karels had assured him she was complying with court orders and that the children would be returned to her care.

On March 26, 2002, Robert LaCroix, a social worker for Sherburne County Social Services, sent a form to appellant in prison requesting that appellant agree to a voluntary termination of parental rights. Shortly thereafter, appellant responded to the letter stating that he needed more time to contact a family member to take care of the children and that he did not want to "lose" his children. But, despite appellant's attempts, no relative agreed to care for the children.

Appellant was personally served with a summons and petition to terminate his parental rights to the children on July 19, 2002. The petition included a statement of his rights and responsibilities and indicated the right to court-appointed representation. Appellant claims that he responded to the petition in writing asking for information on how he could contact his children. He also contends that he sent in his application for legal representation. However, no documents were ever received by either Social Services or Court Administration.

At a hearing on August 27, 2002, Karels, the mother, voluntarily agreed to terminate her parental rights. Appellant was found in default due to his non-appearance at the hearing, and his parental rights were terminated. It was later determined that appellant had arranged with his case-manager to be present by telephone for the hearing. The court determined that appellant had been placed on "hold" on a telephone extension in the Sherburne County Court Administration Office and was waiting to participate in the hearing. As a result, the court granted appellant's motion to vacate the order terminating his parental rights, and set the matter for trial on January 24, 2003.

At trial, appellant testified that while in prison he completed a parenting class and wrote letters to the children's mother asking about them. Appellant also testified that because the children were too young to read, he drew them pictures, made them birthday cards, and has spoken to the girls on the telephone during his incarceration. He testified that his plan upon release from prison is to get a job, get housing, and "start getting to know his children again."

The court found that appellant intermittently lived with Karels and the children from the dates of the children's births through early 1999. The court determined that during this time, neither appellant nor Karels provided food, clothing, shelter, and other care for the children, except to a marginal extent. In addition, the court noted that during this period, appellant occasionally fought with Karels and would leave for long periods of time. The court further noted that appellant has never been the primary custodian or caregiver for the children.

The court found that during his incarceration, appellant did not send any cards or letters directly to the children, nor did he provide any gifts or financial assistance. Consequently, the court determined that

appellant failed to exercise reasonable efforts to sustain a relationship with his daughters. Further, the court found that appellant is unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental, and emotional needs of the minor children. The court held that it is in the children's best interests that they not remain in foster care, but rather be adopted into a family that can provide them with the security and well being to which they are entitled. Thus, the court terminated appellant's parental rights, and this appeal followed.

## ISSUE

Did the district court abuse its discretion when it terminated appellant's parental rights?

## ANALYSIS

■ On review of a district court's findings in a termination-of-parental-rights case, this court is "limited to determining whether the findings address the statutory criteria, whether those findings are supported by substantial evidence, and whether they are clearly erroneous." *In re Welfare of D.D.G.*, 558 N.W.2d 481, 484 (Minn. 1997) (citation omitted). This court closely inquires into the sufficiency of the evidence to determine whether the evidence is clear and convincing. *In re Welfare of J.M.*, 574 N.W.2d 717, 724 (Minn.1998). Although this court defers to the district court's findings, this court exercises great caution in proceedings to terminate parental rights. *In re Welfare of A.J.C.*, 556 N.W.2d 616, 622 (Minn.App.1996), *review denied* (Minn. Mar. 18, 1997). "The paramount consideration in all proceedings for the termination of parental rights is the best interests of the child." Minn.Stat. § 260C.001, subd. 3 (2002).

■ The legislature has established nine criteria that support termination of parental rights. Minn.Stat. § 260C.301, subd. 1(b) (2002). A district court may terminate parental rights when only one criterion is proven, but the primary consideration in every termination case is the child's best interests. Minn.Stat. § 260C.301, subds. 1(b), 7. Although a parent's incarceration alone is not enough to warrant termination of parental rights, the district court may consider the fact of incarceration in conjunction with other evidence supporting the petition for termination. *See In re Welfare of A.Y.-J.*, 558 N.W.2d 757, 761 (Minn.App.1997) (concluding that no error committed in considering father's incarceration, limited contact with son, and failure to cooperate with social workers), *review denied* (Minn. Apr. 15, 1997).

Here, the district court concluded that: (1) pursuant to Minn.Stat. § 260C.301, subd. 1(b)(5), reasonable efforts under the court's direction have failed to correct the conditions leading to A.A.W. and J.L.W.'s out-of-home placement; (2) pursuant to the holding in *In re Staat*, 287 Minn. 501, 178 N.W.2d 709 (1970), appellant abandoned his children; (3) pursuant to Minn. Stat. § 260C.301, subd. 1(b)(2), appellant failed to comply with the duties imposed upon him by the parent-child relationship; and (4) pursuant to Minn.Stat. § 260C.301, subd. 1(b)(8), the children are neglected and in foster care.

### 1. Reasonable efforts

■ Appellant argues that there is insufficient evidence to conclude that social services made reasonable efforts to reunite appellant and his children. "Reasonable efforts" as defined in Minn.Stat. § 260.012(b) (2002), means:

> the exercise of due diligence by the responsible social services agency to use appropriate and available services to meet the needs of the child

and the child's family in order to prevent removal of the child from the child's family; or upon removal, services to eliminate the need for removal and reunite the family.

Whether efforts to reunite the family are reasonable "requires consideration of the length of time the county has been involved with the family as well as the quality of effort given." *In re Welfare of M.G.*, 407 N.W.2d 118, 122 (Minn.App.1987) (citing *In re Welfare of J.J.B.*, 390 N.W.2d 274, 281 (Minn.1986)).

Here, the district court ruled that reasonable efforts failed to correct the conditions leading to the children's placement outside the parental home. The district court found that (1) the children were under the age of eight; (2) the children have resided outside the parental home under court order for in excess of six months; (3) neither parent has complied with the court's orders or a reasonable case plan; and (4) appellant has failed to maintain any contact with the children during the duration of their out-of-home placement. In making its decision, the district court relied on *Matter of Welfare of L.A.F.*, 554 N.W.2d 393, 398 (Minn.1996), holding that there is no statutory requirement that Sherburne County Social Services facilitate or attempt to facilitate contact between appellant and the children to aid him in so complying. *L.A.F.*, however, was not determining whether reasonable efforts are required prior to termination, but whether abandonment could be found if social services had not assisted the parent in making contact with the child. *Id.* at 398.

Minn.Stat. § 260C.301, subd. 1(b)(5)(iii) (2002), requires a showing that "the parent or *parents* have not substantially complied with the court's orders *and* a reasonable case plan" before determining reasonable efforts have failed to correct conditions leading to the children's placement out-of-home. (emphasis added). Here, there is no testimony on the record that indicates any case plan was ever developed. Although it is undisputed that Karels failed to comply with her case plan, the record does not show that appellant was ever offered a reasonable case plan with which to comply. In addition, there is testimony that appellant voluntarily completed a parenting course while incarcerated. Appellant also wrote to the social worker on the case, Robert LaCroix "two times asking him for help [in locating his kids]." Importantly, there is no case law cited that supports the district court's conclusion that appellant's incarceration vitiates his ability to comply with any case plan. Case plans for inmates can and have been formed for a long time in Minnesota.

## 2. Abandonment

The district court concluded that, as a result of the County's failure to make reasonable efforts to facilitate contact between appellant and his children, the County was not able to use the presumption of abandonment contained in Minn. Stat. § 260C.301, subd. 2, (2002). Notwithstanding this conclusion, the district court held that it is not precluded from finding abandonment, provided the finding is based on clear and convincing evidence. Minn.Stat. § 260C.301, subd. 2(a)(2) (2002); Minn.Stat. § 260C.317, subd. 1 (2002). Appellant contends that there is insufficient evidence to support the district court's conclusion that he abandoned his children.

 Incarceration alone is not sufficient to constitute abandonment. *In re Staat* at 505, 178 N.W.2d at 712–13. Parental rights may be preserved if a parental relationship existed prior to incarceration, and if the imprisoned parent continued the relationship to the best of

his ability while incarcerated through letters, cards, visits, and inquiries into the children's welfare. *Id.* at 507, 178 N.W.2d at 713. However, the fact of imprisonment may combine with other factors, such as parental neglect and the withholding of parental affection, to support a finding of abandonment. *Matter of Welfare of Walker,* 287 N.W.2d 642, 644 (Minn.1979). Abandonment requires: (1) actual desertion of the child, and (2) an intention to forsake the duties of parenthood. *In re Staat* at 506, 178 N.W.2d at 713.

Prior to his incarceration, appellant lived with his children for much of their lives. When he was not living with them, he tried, sporadically, to have contact with them. Appellant testified that, while in prison he talked to his children on the telephone, drew them pictures, and corresponded with their mother to learn about their ongoing lives. Appellant testified that he wrote letters to Karels rather than directly to the children because the children were too young to read. Further, appellant testified that his writing is poor and that his cellmates helped rewrite his letters for him. He arranged to be available by telephone for court hearings and mailed letters to the social worker in charge of the case seeking representation of counsel and to help him keep his parental rights. The state did not refute appellant's testimony that he exchanged drawings and cards with his children until he was prevented from having contact with them by reason of the child protection action.

Despite this testimony, the district court found actual desertion by reason of appellant's incarceration. On two separate occasions, while appearing to agree that incarceration alone could not be a basis to terminate parental rights, the court contradicted itself by relying on the fact that appellant was incarcerated to support its finding of abandonment. The first instance is the court's statement that:

> [T]here is actual desertion by reason of [appellant's] incarceration, and [appellant] has not been in direct contact with these children and has not seen them since March 2000, and has made only two inquiries of Sherburne County Social Services as to their status throughout the duration of their out-of-home placement.

This finding of desertion is predicated solely on the fact that appellant is incarcerated. That is wrong as a matter of law.

The second instance concerns the district court's reasoning that appellant somehow "planned" abandonment. In its memorandum, the court stated that:

> [appellant] *did* intentionally commit crimes, for which he knew that, if caught, the consequence would be arrest and incarceration with consequent abandonment of his children for the duration of the incarceration.

The court somehow found this as an intentional step toward abandonment. Essentially, this analysis implies that at some point before the burglary, appellant methodically considered the possibility that he might be caught and, if caught, might be incarcerated, and if incarcerated, he might be found to have abandoned his children, and then with all those "ifs" plotted out, intentionally went out and committed the crime anyway. This reasoning does not persuade us.

### 3. Parent-child relationship

Appellant argues that there is insufficient evidence to conclude that he has refused to comply with the duties of being a parent. Minn.Stat. § 260C.301, subd. 1(b)(2) (2002), provides that the court may terminate parental rights if it finds:

[T]hat the parent has substantially, continuously, or repeatedly refused or neglected to comply with the duties imposed upon that parent by the parent and child relationship, including but not limited to providing the child with necessary food, clothing, shelter, education, and other care and control necessary for the child's physical, mental, or emotional health and development, if the parent is physically and financially able, and either reasonable efforts by the social services agency have failed to correct conditions that formed the basis of the petition or reasonable efforts would be futile and therefore unreasonable.

The statute requires that the parent be *physically and financially* able to provide for the child. *Id.*

The district court determined that appellant failed to comply with the duties imposed by the parent-child relationship because he only intermittently engaged in parenting prior to being incarcerated and neglected his parental duties by delegating all parenting duties to the children's mother despite his knowledge of her drug use. Appellant testified that Karels assured him that she would do whatever was necessary to have the children returned to her and that he did not feel her drug use prevented Karels from doing a "good job" as a mother.

However, the trial court did not address the requirement that the parent be *physically and financially* able to provide for the child. Appellant is incarcerated and not able to *physically* provide for his children. Additionally, given his limited discretionary income, the record indicates that appellant is not *financially* able to provide for his children either. As a result, the record indicates that this requirement for the statute has not been met.

### 4. Neglected and in foster care

Finally appellant argues that there is insufficient evidence to conclude that the minor children are neglected and in foster care. Parental rights may be terminated if the district court finds "that the child is neglected and in foster care." Minn.Stat. § 260C.301, subd. 1(b)(8).

"Neglected and in foster care" means a child

(a) [w]ho has been placed in foster care by court order; and

(b) [w]hose parents' circumstances, condition, or conduct are such that the child cannot be returned to them; and

(c) [w]hose parents, despite the availability of needed rehabilitative services, have failed to make reasonable efforts to adjust their circumstances, condition or conduct, or have willfully failed to meet reasonable expectations with regard to visiting the child or providing financial support for the child.

Minn.Stat. § 260C.007, subd. 24 (2002).

Here, the children have been in foster care for approximately one year and eight months. Should appellant's parental rights be reinstated, this would extend the foster care stay a minimum of another two years and four months. Although Minn. Stat. § 260C.007, subds. 24(a) and (b) (2002) have clearly been satisfied by the facts of this case, the district court did not analyze whether Minn.Stat. § 260C.007, subd. 24(c) (2002) was established by clear and convincing evidence. The record indicates that appellant voluntarily completed a parenting class while in prison and was never approached by social services to establish a case-plan regarding his children. There was no evidence presented with regard to what is a reasonable expectation for visitation and child support when a parent is in prison, and the district court did not make any conclusions regarding what would have been reasonable. Addi-

tionally, the court did not address whether services could be provided to appellant to allow him to reunify with his children "within an ascertainable period of time."

## 5. Best Interests of the children

The best interests of the child are paramount in a termination-of-parental rights proceeding. Minn.Stat. § 260C.301, subd. 7 (2002). When analyzing the best interests of the child, the court must balance three factors: (1) the child's interest in preserving the parent-child relationship; (2) the parent's interest in preserving the parent-child relationship; and (3) any competing interest of the child. *In re Welfare of M.P.*, 542 N.W.2d 71, 75–6 (Minn.App. 1996). Both the interests of the parent and child are considered along with the circumstances of the particular case in an effort to determine which of the above factors predominates. *Id.*

Essentially, this case represents a clash between an incarcerated parent's rights and statutes designed to give young children some stability in life. Even before his incarceration, appellant's interaction with his children was limited. Appellant and the children's mother have never been married. Although appellant intermittently lived with the children and their mother from the dates of the children's births through early 1999, appellant did not provide food, clothing, shelter, and other care for the children except to a marginal extent. In addition, appellant occasionally fought with the children's mother and would leave for long periods of time. The record reflects that appellant was aware of the children's mother's drug problem, but made no effort to intervene.

Despite the district court's questionable application of the law on abandonment, we make our decision with the best interests of the minor children in mind. The children's mother voluntarily terminated her parental rights. The unmarried appellant

father still has at least two more years to serve in prison. We have to examine appellant's opposition to the district court's decision in the harsh light of glaring reality; the reality being that the children have no parents now and will have to wait *at least* two years before they *might* have one. Appellant cannot be barred from contesting the termination of his parental rights because he is incarcerated. Incarceration is a factor, not without weight, but cannot be determinative standing alone. But correspondingly, appellant cannot expect us to view the case as if he were "outside" and available tomorrow to take over day-to-day parenting.

## DECISION

Even conceding good faith modest attempts by appellant while in prison to maintain contact with his children, we cannot find, taking into account the best interests of the children, that the district court overstepped the bounds of its discretion when it terminated appellant's parental rights.

**Affirmed.**